IN RE SWISHER: KATRINA SUE SWISHER, JOHN THOMAS SWISHER, AND SAMANTHA KAY SWISHER

No. 8410DC834

(Filed 16 April 1985)

1. **Parent and Child § 1.6— termination of parental rights—child neglect**

    The evidence and findings supported the trial court's order terminating respondent mother's parental rights in her three children on the ground of neglect. G.S. 7A-289.32(2); G.S. 7A-278(4) (now G.S. 7A-517(21)).

2. **Parent and Child § 1.5— termination of parental rights—effect of failure to conduct periodic custody reviews**

    A petition to terminate parental rights was not subject to dismissal because the periodic custody reviews required by G.S. 7A-657 were not conducted, especially where the absence of periodic reviews was not prejudicial to respondent because at the times the reviews should have been held she was separated from the children because of her alcoholism or because she had chosen to abandon the children by leaving her place of residence without providing an address where she might be contacted regarding the children.

APPEAL by respondent from *Bason, Judge*. Judgment entered 14 March 1984 in District Court, WAKE County. Heard in the Court of Appeals 4 April 1985.

The Wake County Department of Social Services filed a petition to terminate the parental rights of Merle F. Swisher and Mary L. Swisher Willis as to the three named minor children. Merle Swisher was served by publication but made no appearance in this action. Mrs. Willis appeared and contested the action. At the hearing on the matter the petitioner offered evidence which tended to show the following facts. In April 1980, Mrs. Willis moved from Indiana to North Carolina with her three minor children. Shortly thereafter she voluntarily placed the children with Social Services because she was unable to care for them. On 2 July 1980, the children were returned to the mother's physical custody. When the children were returned, the Department of Social Services paid the first month's rent and a deposit for electricity and heat for Mrs. Willis. At this time Mrs. Willis was employed. During the time the children were in her custody Mrs. Willis drank to excess, nearly a six pack of beer a day, and slept a lot during the day. The children were not fed regular meals and the residence was not cleaned properly. In August 1980, Mrs.

---

---

Willis and the children were evicted for nonpayment of rent. On or about 11 September 1980, the children were returned to foster care and Mrs. Willis entered the Alcoholic Treatment Center in Raleigh. Shortly after her release from the treatment center Mrs. Willis entered Dorothea Dix Hospital where she stayed for three or four weeks. While at the hospital the respondent met George Willis. After she left the hospital, Mrs. Willis moved into a half-way house in Raleigh. In December 1980, Mrs. Willis left the half-way house without leaving a forwarding address. In January 1981, she married Mr. Willis. Following the marriage the Willises lived in Fuquay-Varina, Stedman and Fayetteville. Following her departure from the half-way house the only contacts Mrs. Willis had with the children were Easter cards in April 1981 and a birthday card to Katrina in September 1981. Social Services attempted unsuccessfully to contact Mrs. Willis on several occasions. In November 1981, the petitioner contacted Mrs. Willis and informed her that it was going to seek to have her parental rights terminated. Mrs. Willis made no attempts to see the children until after the petition to terminate was filed on 9 August 1982.

The trial court found that respondent's rights should be terminated on three grounds: (a) neglect, (b) leaving the children in foster care for more than two consecutive years without showing positive response to the petitioner's efforts to encourage her to strengthen the parental relationship and failing to make constructive plans for the children's future, and (c) for failing to pay a reasonable portion of the cost of care for the children for a continuous period of six months preceding the filing of the petition to terminate her rights. From this judgment, Mrs. Willis appealed.

*James R. Fullwood for petitioner appellee.*

*Boyce, Mitchell, Burns & Smith, by Carole S. Gailor, for respondent appellant.*

ARNOLD, Judge.

[1]   G.S. 7A-289.32 sets forth six distinct and separate grounds upon which an order terminating parental rights may be based. In the case *sub judice* the court based its order upon three of these grounds. If either of these grounds is based upon findings of fact supported by clear, cogent and convincing evidence the order appealed from should be affirmed. *In the Matter of Moore*, 306 N.C.

In re Swisher

394, 293 S.E. 2d 127 (1982), *appeal dismissed* 459 U.S. 1139, 74 L.Ed. 2d 987, 103 S.Ct. 776 (1983). The trial court found pursuant to G.S. 7A-289.32(2) that the parents were subject to having their rights terminated because their children were neglected children within the meaning of G.S. 7A-278(4) (now G.S. 7A-517(21)). This conclusion is supported by the following pertinent findings of fact:

. . . .

10. That the children came to North Carolina from Indiana with their mother in April of 1980. That Mrs. Willis testified on direct examination that she came to North Carolina to seek employment. That she had told a social worker for Petitioner that she came to North Carolina to find her brother, in Raleigh, North Carolina and that Indiana Social Services had harassed her. That in fact, she had located her brother in Newport News, Virginia, prior to coming to Raleigh, North Carolina.

11. That upon arriving in Raleigh, Mrs. Swisher quickly found employment at Mail-Sort, that Petitioner helped her locate housing at the Raleigh Rescue Mission, and provided and offered other supportive services to Mrs. Swisher. That the children were placed in foster care as dependent juveniles.

. . . .

16. That on July 2, 1980, following a court hearing, the care of the children was returned to Mrs. Willis while custody remained in the Petitioner, as Mrs. Willis had made significant progress. That Petitioner continued to help Mrs. Willis to continue to care for her children.

17. That on July 29, 1980, Mrs. Norwood visited Mrs. Willis and Mrs. Willis had slurred speech, puffy eyes, and was disoriented and unsteady. Mrs. Norwood did not smell the odor of alcohol. The home was very messy and old food was on the floor.

18. In July, 1980, Mrs. Willis told Social Worker Norwood that the house rent was current, that she had to pay her CP&L bill and could catch it up, that she had paid

babysitters, and that she had not paid one babysitter, Mrs. Cross and Mrs. Cross would no longer keep the children.

19. When Mrs. Willis moved into the house, the Petitioner paid the first month's rent and the deposit on the electric and heat bills.

20. Petitioner attempted to help Mrs. Willis with budgeting and finding volunteer babysitters, but Mrs. Willis declined this help. Mrs. Willis said she had enough money to take care of the children.

21. That while the children were with Mrs. Willis in Raleigh, she had an income of approximately $230.00 per week.

22. During an August 11, 1980, visit to the home of Mrs. Willis, Mrs. Norwood found the house to be very messy, bottles, clothing and other things laying around. The only food in the house was some baloney, drinks, and crackers. On August 11, 1980, Mrs. Willis told Mrs. Norwood that she was behind in the rent and was being evicted. That the mother had previously said she was not behind in the rent. Mrs. Willis said on August 11, 1980, that she did not know where the money had gone and that she also owed the electric and gas bills. That the only rent paid was that paid by the Petitioner. Mrs. Norwood suggested that part of the money had gone to purchase alcoholic beverages and Mrs. Willis denied this totally and regularly denied drinking. Mrs. Norwood offered budgeting and homemaker services to Mrs. Willis and Mrs. Willis refused this assistance. That in August, 1980, Mrs. Willis was employed at Royal Villa and as a security guard at Brendles. That the mother did not pay rent, electricity or gas. There was little food in the home. That Mrs. Willis worked, had money and said she did not know where it went.

23. On September 5, 1980, at Dell Adams Street, Mrs. Norwood visited Mrs. Swisher and observed that broken Coke bottles were on the floor, glass and things were thrown all around the house. John had a cut on his foot. That the house was not clean.

24. In September, Mrs. Willis moved to Six Forks Road in Raleigh, North Carolina. That this home was never fixed up for a residence for the children.

25. On or about September 8, 1980, Mrs. Willis returned the children to the Beckwith foster home.

26. That while the children were with their mother in Raleigh from July 2, 1980 until September 8, 1980, Mrs. Willis was regularly drinking, that nearly every day she would drink a six pack of beer and then sleep, that she acted drowsy and dizzy and slept a great deal of the time that she was at home as a result of her drinking. That Katrina fixed coffee for her mother and helped to care for the other two children. That the mother did not provide for the regular feeding of the children. No one cleaned up the house. That through her drinking, Mrs. Willis neglected the children.

27. That on September 10, 1980, Mrs. Willis advised Mrs. Norwood that Mrs. Willis was arranging to enter the Alcohol Treatment Center. She was admitted on September 22, 1980 for approximately two weeks. Upon release, Petitioner helped Mrs. Willis locate a place to stay.

28. That on October 29, 1980, Mrs. Norwood found Mrs. Swisher to be disoriented and assisted in having her voluntarily admitted to Dorothea Dix Hospital, where Mrs. Willis stayed for three to four weeks.

29. That while at Dorothea Dix Hospital, Mrs. Willis met Mr. George Willis who she married in January, 1981.

30. Upon release from Dorothea Dix Hospital, Mrs. Willis resided at a half-way house on Boylan Avenue in Raleigh, North Carolina.

31. On December 11, 1980, Mrs. Norwood spoke with Mrs. Willis about planning a Christmas visit with the children.

32. On December 21, 1980, Mrs. Norwood again spoke to Mrs. Willis and prior to Christmas, Mrs. Willis left the half-way house without notifying the Petitioner. That Petitioner did not hear from Mrs. Willis and did not know her where-

abouts. That Mrs. Willis did not contact the children about her leaving.

33. That following December, 1980, Petitioner made diligent efforts to locate Mrs. Willis by contacting the Police and through other efforts.

34. In April, 1981, Mrs. Willis sent Easter cards to the children with a return address of Fuquay-Varina. Social Worker Paige Robinson wrote to Mrs. Willis at the Fuquay-Varina address. No reply was received. The letter was not returned. That this constituted the first information Petitioner had as to Mrs. Willis' whereabouts and was Mrs. Willis' first contact with the children since December of 1980.

35. In June, 1981, Mrs. Robinson got a new address through the post office for Mrs. Willis in Stedman, North Carolina, and wrote to that address in June and August asking Mrs. Willis to contact her. The June letter was not returned and the August letter, a certified letter, was returned unclaimed.

36. That in August of 1981, Mrs. Robinson obtained a Fayetteville address for Mrs. Willis. That in September, 1982, Katrina received a birthday card and $10.00 from her mother with a return address of 313 Cool Springs Street, Fayetteville, North Carolina. Mrs. Robinson wrote Mrs. Willis in Fayetteville the first letter of August 27, 1981 which was returned unclaimed and a second letter was sent in September, 1981, and on October 29, 1981, Mrs. Willis telephoned Mrs. Robinson. This was the first contact Mrs. Willis had made with Petitioner since December of 1980.

37. Mrs. Willis says she got the letters in Stedman and in Fayetteville.

38. That during the absence of their mother, the children had been worried, concerned, and upset as to what had happened to their mother. That the children were confused by the absence of their mother.

39. Mrs. Robinson met with Mr. and Mrs. Willis on November 5, 1981, in Raleigh, North Carolina. Mrs. Swisher had left Raleigh in December, 1980, and married George Willis

whom she met while they were both patients at Dorothea Dix Hospital. The marriage was in Dillon, South Carolina in January of 1981. Mr. and Mrs. Willis lived in Fuquay-Varina, Stedman, and Fayetteville. Mrs. Willis said she had not called Petitioner because she could not remember Mrs. Norwood's name and she lived in the country in Stedman and had to drive into town to telephone. She said she had not come to see the worker due to car trouble.

40. Mrs. Swisher was in Raleigh in April of 1981 to get her driver's license and in June of 1981. She did not contact the Petitioner. After moving to Fayetteville, North Carolina, Mrs. Willis and her husband would from time-to-time drive to Fuquay, North Carolina and Raleigh, North Carolina to visit relatives. They did not visit the Petitioner or the children.

41. On November 6, 1981, when asked about her plans for the children, Mrs. Willis gave no plans to Ms. Robinson. Mrs. Willis said she did not have any plans. Mrs. Willis was living in a two bedroom home in Fayetteville, North Carolina. In November of 1981, Mrs. Willis did not complain of any physical difficulty that would prevent her from working.

42. Mrs. Willis, in November of 1981, said she was not employed and Mr. Willis had an income of about $643.00 per month. Mrs. Willis was looking after Mr. Willis' uncle in Fayetteville during the day while the uncle's wife worked. Mrs. Willis testified that during the day she stays home, goes grocery shopping, goes to the laundromat, writes checks and goes to the bank. Mr. and Mrs. Willis own furniture and a car. They go places together.

43. That Mr. Willis' physical condition is such that he does not need Mrs. Willis' attention.

44. That on November 30, 1981, Petitioner wrote Mrs. Willis and explained that it was to seek to terminate her rights and that she might wish to retain an attorney. Petitioner heard nothing further from Mrs. Willis until after the petition was filed in this case.

45. That Mrs. Willis did not visit the children between December, 1980, when she left Raleigh, North Carolina, and the date of the filing of the petition.

46. That other than the $90,000 initially paid for child support in 1980, Mrs. Willis paid nothing in support for the three children. That after leaving Raleigh, North Carolina in December of 1980, Mrs. Swisher was able to marry, move from home to home and town to town, travel around on her personal business, conduct her financial affairs and the financial affairs of her husband.

. . . .

Although the respondent has failed to except to any of these findings of fact as required by Rule 10(b) of the Rules of Appellate Procedure, nevertheless we have examined the record and determined that these findings are supported by clear, cogent and convincing evidence. Furthermore, we hold that these findings support the court's conclusion that Mrs. Willis was subject to having her parental rights terminated because her children were neglected children as defined by G.S. 7A-278(4) (now G.S. 7A-517(21)). Having determined that the court's order is supported by one of the grounds set forth in G.S. 7A-289.32, we need not reach respondent's contention that the other two grounds relied upon by the court were not supported by clear, cogent and convincing evidence.

[2] Finally, we consider the respondent's contention that the court erred by failing to dismiss the petition to terminate Mrs. Willis' parental rights in the children for failure of the petitioner to comply with the review requirements set forth in G.S. 7A-657. The statute in pertinent part provides:

In any case where custody is removed from a parent, the judge shall conduct a review within six months of the date the order was entered, and shall conduct subsequent reviews at least every year thereafter. The Director of Social Services shall make timely requests to the clerk to calendar the case at a session of court scheduled for the hearing of juvenile matters within six months of the date the order was entered. The Director shall make timely requests for calendaring of the yearly reviews thereafter. The clerk shall give 15 days' notice of the review to the parent or the person standing in loco parentis, the juvenile if 12 years of age or more, the guardian, foster-parent, custodian or agency with

custody, the guardian ad litem, and any other person the court may specify, indicating the court's impending review.

While the evidence shows that the petitioner failed to comply with the terms of the statute with regards to hearing on the placement of the children, we are convinced that this omission was not sufficient to defeat the petition to terminate the parental rights of Mrs. Willis. The respondent has not cited any authority for the proposition that the failure to conduct the periodic reviews required by statute can be pleaded as a bar to the termination of a parent's rights. Furthermore, we note that the court's failure to conduct periodic reviews of the children's placement was not prejudicial to Mrs. Willis because at the times the review should have been held she was either separated from the children because of her alcoholism or because she had chosen to abandon the children by leaving her place of residence without providing an address where she might be contacted regarding the children. Thus, we find no merit in respondent's argument.

The judgment appealed from is

Affirmed.

Judges PHILLIPS and COZORT concur.