In re: KIEAFA LOCKLEAR

No. COA01-1269

(Filed 16 July 2002)

**Termination of Parental Rights— findings—insufficient**

The trial court's findings were insufficient to terminate parental rights under Chapter 7A where the court failed to specifically list the conditions which the parent had not met, failed to find that the parent had the ability to pay support, failed to find that the parent had failed to address the concerns which led to her child's removal, and attempted to incorporate by reference another order which was not included in the record, made some findings which were not adequately specific, and made some findings in the double negative.

Appeal by respondent from judgment entered 6 April 2001 by Judge John B. Carter in Robeson County District Court. Heard in the Court of Appeals 25 April 2002.

*J. Hal Kinlaw, Jr. for petitioner-appellee.*

*Tiffany Peguise-Powers for respondent-appellant.*

THOMAS, Judge.

Gwendolyn Sue Locklear Smith, respondent, appeals the termination of her parental rights to her son, Kieafa Ladarian Armandi Locklear.

Smith argues four assignments of error: (1) the trial court committed reversible error in finding as a fact that grounds existed to terminate her parental rights; (2) the trial court committed reversible error in finding as a fact that it was in Kieafa's best interests that

Smith's parental rights be terminated; (3) the trial court committed reversible error in concluding as a matter of law that grounds existed to terminate Smith's parental rights; and (4) the trial court committed reversible error in ordering that Smith's parental rights be terminated. We address assignments of error (1) and (3). For the reasons discussed herein, we reverse and remand and do not reach assignments of error (2) and (4).

Kieafa was born 19 March 1995, but the Robeson County Department of Social Services (DSS) became involved with Smith as early as 1990 concerning her other children. DSS received several reports of Smith failing to take proper care of her children and using crack cocaine since Kieafa's birth. Further, Smith has previously lost custody of three of her children. One of those three, Jareka, is still in the custody of DSS and Smith's visitation with her had to be stopped because of domestic violence.

In 1996, Kieafa was adjudicated neglected. Smith had left Kieafa, who suffers from severe asthma, with Frank Williams, stating that she was going to buy Kieafa some shoes. Instead, Smith went to stay with Mark McNeill, did not return for several days, and did not contact Williams. He became concerned that Smith may have become a victim of a drug dealer, who was supposedly looking for her and had threatened her with bodily harm. He eventually took Kieafa to the Robeson County Sheriff's Department.

DSS was notified and filed a petition alleging neglect. On 1 July 1996, the trial court adjudicated Kieafa neglected and placed him in the custody of DSS. He was later returned to her care.

However, DSS filed another neglect petition in June 1997 because Smith again left Kieafa with a neighbor, said she would return in "a few hours," but did not. The first neighbor had another neighbor watch Kieafa that night. On the following day, Smith still did not return. Five days after initially leaving Kieafa with a neighbor, Smith's whereabouts remained unknown. DSS eventually obtained custody.

At the adjudicatory hearing, Smith explained that she had traveled to Newton Grove with her boyfriend and he had left her there. She claimed to have spent the five days attempting to return home.

The trial court adjudicated Kieafa neglected and again placed him in the custody of DSS.

On 19 March 1999, DSS filed a petition to terminate the parental rights of Smith. We note that when the petition was filed, Chapter 7A of the North Carolina General Statutes governed termination of parental rights and is therefore the controlling authority in the instant case. By the time the case was heard, however, Chapter 7B had been enacted.

There is a two-step process in a termination of parental rights proceeding. *In re Montgomery*, 311 N.C. 101, 316 S.E.2d 246 (1984). In the adjudicatory stage, there must be established that at least one ground for the termination of parental rights listed in N.C. Gen. Stat. § 7A-289.32 (now codified as section 7B-1111) exists in order to proceed to disposition. N.C. Gen. Stat. § 7A-289.30 (1998) (now codified as N.C. Gen. Stat. § 7B-1109). In this stage, the court's decision must be supported by clear, cogent and convincing evidence with the burden of proof on the petitioner. *In re Swisher*, 74 N.C. App. 239, 240, 328 S.E.2d 33, 35 (1985). We note that Chapters 7A and 7B interchangeably use the "clear, cogent and convincing" and the "clear and convincing" standards. It has long been held that these two standards are synonymous. *Montgomery*, 311 N.C. at 109, 316 S.E.2d at 252.

Once one or more of the grounds for termination are established, the trial court must proceed to the dispositional stage where the best interests of the child are considered. There, the court shall issue an order terminating the parental rights unless it further determines that the best interests of the child require otherwise. N.C. Gen. Stat. § 7A-289.31(a) (1998) (now codified as section 7B-1110(a)). *See also In re Blackburn*, 142 N.C. App. 607, 543 S.E.2d 906 (2001).

In terminating the parental rights of Smith, the trial court found:

That the [sic] prior to filing the petition the juvenile's mother has not [sic]:

(a) failed to cooperate with the Department of Social Services for the return of the juvenile;

(b) has willfully left the juvenile in custody of the Department in foster care for at least twelve months;

(c) has paid no child support towards the care of the juvenile;

(d) has not visited the juvenile on a regular basis.

.

**IN RE LOCKLEAR**

[151 N.C. App. 573 (2002)]

Beyond these findings, most of the trial court's findings concern the efforts made by DSS to reunify the family.

The North Carolina General Statutes provide that, in the adjudicatory stage, "[t]he court shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7B-1111 which authorize the termination of parental rights of the respondent." N.C. Gen. Stat. § 7B-1109(e) (2001). However, in the instant case, the trial court failed to: (1) find that Smith had the ability to pay support; (2) find that Smith had not addressed the concerns which led to Kieafa's removal; and (3) specifically list the conditions that Smith had not met. Further, the trial court attempts to incorporate by reference another order dated 15 March 1995 into its findings. *See In re Brownlee*, 301 N.C. 532, 272 S.E.2d 861 (1981). But that order was not included as a part of the record. Additionally, the findings were stated in the double negative. The findings are actually problematic not only because some of them were in the double negative, but also because the few others were not adequately specific.

Our review on appeal is limited to determining whether the trial court's findings are based on clear, cogent and convincing competent evidence. *In re Allen*, 58 N.C. App. 322, 293 S.E.2d 607 (1982). If they are, then the findings are binding on appeal. *Id.* Here, the trial court's findings are clearly insufficient to establish grounds for termination.

Due to a lack of adequate findings, we reverse the trial court's order terminating Smith's parental rights and remand for proceedings consistent with this opinion. The trial court shall determine whether it is appropriate to allow additional evidence prior to making findings and conclusions.

REVERSED AND REMANDED.

Judges MARTIN and TYSON concur.