TIMMONS-GOODSON, Judge.
T.J. ("respondent") appeals the trial court order terminating her parental rights to her minor son, Alex.[1] For the reasons discussed herein, we affirm the trial court's order.
The facts and procedural history pertinent to the instant appeal are as follows: On 3 April 2001, the Guilford County Guardian Ad Litem Program ("petitioner") filed a petition to terminate the parental rights ("the petition") of both respondent and Alex's father. The petition contained the following allegations:
6. Grounds exist to terminate parental rights of [respondent] . . . as follows:
(A) Pursuant to G.S. §7B-111(a)(1), [respondent has] neglected [Alex]; that [Alex's] great grandparents . . . were granted custody of the child on July 17, 1992 because [respondent] was incarcerated, became unable to provide for his care and supervision . . . due to his "...extremely disruptive behavior" and requested that he be placed in the custody of DSS on or about November 10, 1998; that [respondent's] first response was to inform DSS about a maternal relative in Danville, Virginia, and although that relative placement was properly deemed inappropriate by DSS, due to the maternal aunt's criminal history, [respondent] maintains her position that she wants [Alex] placed with that relative; that [respondent] was projected to be released from jail at least twice since [Alex] has been in custody, but during October 2000, DSS was informed that due to a new crime [respondent] committed while incarcerated her release date is now projected to be in early 2002; that [respondent] wrote a letter to [Alex] during November 2000 stating that she hoped [Alex] would stay with the great grandparents and that she thinks she has two more years of incarceration; that [respondent's] correspondence has been sporadic in that she allows two to four months to pass by before she writes another letter to [Alex], that she reported to DSS in August 2000 that she did not write consistently because she needed a break[.]
(B) Pursuant to G.S. §7B-1111(a)(2) that both parents have willfully left the child in foster care and outside the home for more than twelve (12) months without showing to the satisfaction of the court that reasonable progress has been made within twelve (12) months in correcting those conditions which led to the removal of the child; that [respondent] has been in contact with DSS and is aware that the plan to reunify the child with the great grandparents has not been successful; that although [respondent] has known since the homestudy of the maternal aunt that DSS does not consider that an acceptable placement, [respondent] still desires that the child remain with the grandparents or be placed with the maternal aunt[.]
. . . .
(D) Pursuant to G.S. §7B-1111(a)(7) the parents have willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition; that [respondent] was aware that the plan to reunify the child with the great grandparents was becoming very difficult to accomplish and appearing to no longer be a viable option; that during this same time [respondent] committed a new crime which lengthened her incarceration time for at least another year[.]
Respondent was incarcerated in Virginia at the time the petition was filed. The petition was served upon respondent by certified mail. Respondent requested and received court-appointed counsel. On 7 June 2001, a Notice of Hearing was mailed to respondent and a copy was filed with the Guilford County District Court. The date of the hearing was subsequently rescheduled, and a second Notice of Hearing was mailed to respondent and filed with the Guilford County District Court on 30 August 2001. Respondent filed an Answer to the petition on 30 October 2001.
On 30 October 2001, the trial court held a hearing on the petition. Respondent was not present at the hearing but was represented by her court-appointed counsel. After hearing testimony from the parties and receiving evidence, the trial court determined that sufficient grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(1), 7B-1111(a)(2), and 7B-1111(a)(7). The trial court also determined that it was in Alex's best interests to terminate respondent's parental rights. On 10 January 2002, the trial court filed an order terminating respondent's parental rights andrequiring that custody of Alex remain with the Guilford County Department of Social Services ("DSS"). Respondent appeals.
The issues on appeal are whether: (I) respondent's due process rights were violated because no summons was included in the petition; (II) the trial court erred by determining that sufficient grounds existed to terminate respondent's parental rights; and (III) the trial court abused its discretion by determining that it was in Alex's best interests to terminate respondent's parental rights.
Respondent first argues that the trial court erred by failing to cause a summons to be issued with the petition. Respondent asserts that because no summons was included in the petition, her due process rights were violated and the trial court did not have jurisdiction over the termination proceeding. We disagree.
Upon a filing of a petition to terminate parental rights, N.C. Gen. Stat. § 7B-1106(a) (2003) requires that the trial court issue a summons to the parents of the juvenile. Subsection (b) states that the summons shall include:
(1) The name of the minor juvenile;
(2) Notice that a written answer to the petition must be filed with the clerk who signed the petition within 30 days after service of the summons and a copy of the petition, or the parent's rights may be terminated;
(3) Notice that if they are indigent, the parents are entitled to appointed counsel; the parents may contact the clerk immediately to request counsel;
(4) Notice that this is a new case. Any attorney appointed previously will not represent the parents in this proceeding unless ordered by the court;
(5) Notice that the date, time, and place of the hearing will be mailed by the clerk upon filing of the answer or 30 days from the date of service if no answer is filed; and
(6) Notice of the purpose of the hearing and notice that the parents may attend the termination hearing.
N.C. Gen. Stat. § 7B-1106(b) (2003). However, this Court has recently held that where a respondent fails to except to a due process error and makes a general appearance in a termination of parental rights hearing, the respondent waives the right to assert the defenses of insufficiency of process and lack of jurisdiction. In re Howell, ___ N.C. App. ___, ___, 589 S.E.2d 157, 160 (2003); but see In re Alexander, 158 N.C. App. 522, 525, 581 S.E.2d 466, 468 (2003) ("[T]he General Assembly's use of the word `shall' establishes a mandate, and failure to comply with the statutory mandate is reversible error.").
In Howell, the respondent argued that the trial court had no jurisdiction over her or the hearing to terminate her parental rights because no summons was issued with the petition to terminate her parental rights. We noted that, according to N.C. Gen. Stat. § 1A-1, Rule 12(h), "certain defenses must be raised by a pre-answer motion or in a responsive pleading[,] . . . [including] jurisdiction over the person, insufficiency of process, and insufficiency of service of process." Howell, ___ N.C. App. at ___, 589 S.E.2d at 160. We further noted that, although therespondent was not properly issued a summons or petition, the respondent had failed to object to a "lack of personal jurisdiction over her or insufficiency of process or service of process at any point prior to or during the termination hearing." Id. at ___, 589 S.E.2d at 160. Thus, we concluded respondent had waived the defenses she asserted on appeal, and we held that the trial court properly exercised its jurisdiction in the case. Id. at ___, 589 S.E.2d at 160.
In the instant case, respondent was timely served with the petition to terminate her parental rights. Respondent was also timely notified of the original and rescheduled dates of the hearings regarding termination of her parental rights. Prior to the hearing, respondent requested and received a court-appointed attorney who appeared on her behalf at both the adjudicatory and dispositional stages of the hearing. Respondent filed an Answer with the trial court denying the allegations contained in the petition. From these facts, we conclude respondent was supplied with the information and aid necessary to protect her interests during the proceedings. See In re Nolen, 117 N.C. App. 693, 696, 453 S.E.2d 220, 222 (1995) (even if respondent shows a statute was violated, respondent must also show any error was prejudicial). Furthermore, we note that at no time prior to or during the hearing did respondent except to the trial court's jurisdiction over her or the petition to terminate her parental rights. As we recognized in Howell, "[o]ur Supreme Court has held that a general appearance of a party in an action gives the court jurisdiction over theappearing party even though no service of a summons is shown." ___ N.C. App. at ___, 589 S.E.2d at 160 (citing Harmon v. Harmon, 245 N.C. 83, 86, 95 S.E.2d 355, 359 (1956) ("[T]he filing of an answer is equivalent to a general appearance, and a general appearance waives all defects and irregularities in the process and gives the court jurisdiction of the answering party even though there may have been no service of summons.")). Thus, we conclude that respondent was not prejudiced by the absence of the summons, and we also conclude that respondent has waived her right to assert on appeal the defenses of insufficiency of service and lack of jurisdiction. Therefore, we hold that the trial court did not err in exercising jurisdiction over respondent and the petition to terminate her parental rights.
Respondent next argues that the trial court erred in concluding that sufficient grounds existed to terminate respondent's parental rights. Apart from the general statement that "the trial court erred when it found there were sufficient grounds to terminate the parental rights of the respondent/appellant mother," respondent failed to assign error to any particular finding of fact entered by the trial court. "A single assignment [of error] generally challenging the sufficiency of the evidence to support numerous findings of fact, as here, is broadside and ineffective." Wade v. Wade, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266, disc. review denied, 313 N.C. 612, 330 S.E.2d 616 (1985). Thus, the trial court's findings of fact are deemed to be supported by competent evidence, and they areconclusive on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
Respondent nevertheless asserts that the trial court's order should be reversed because the trial court's findings merely recite allegations contained with in the petition as well as the requirements of N.C. Gen. Stat. § 7B-1111(a)(2) (2003). We disagree.
Finding of fact number seven contains the following pertinent statements:
7. That sufficient grounds exist for termination of parental rights of the respondent mother, pursuant to N.C.G.S. § 7B-1111(a)(1) in that she has neglected [Alex]. Specifically, [Alex's] great-grandparents . . . who were granted custody of [Alex] on July 17, 1992 because the mother was incarcerated, became unable to provide for the care and supervision of [Alex] due to his "...extremely disruptive behavior" and requested that he be placed in DSS custody on or about November 10, 1998. . . .
Finding of fact number nine contains the following pertinent statements:
9. That sufficient grounds exist for termination of parental rights of the respondent mother, pursuant to N.C.G.S. § 7B-1111(a)(2) in that she willfully left [Alex] in foster care and outside the home for more than twelve (12) months without showing to the satisfaction of the court that reasonable progress has been made within twelve (12) months in correcting those conditions which led to the removal of [Alex]. Specifically, that the mother reported to DSS that [Alex] was placed in the great-grandparents [sic] custody in 1992 through the Virginia court system because [respondent] was being incarcerated for an extensive period of time; that [respondent's] intention was for [Alex] to remain with the great-grandparents untilshe was released from prison; that when [Alex] first came into custody in November 1998, the mother informed DSS that she had a pending release date in November 2001 and once free would attempt to reunify with [Alex] and that until then she wanted [Alex] to be placed with the great-grandparents or [her aunt]. . . .
In all actions tried upon the facts and without a jury, N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2003) requires that the trial court "find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." It is well-established that in an order terminating a respondent's parental rights, the trial court's factual findings must be more than mere recitations of the allegations contained in the petition. In re Anderson, 151 N.C. App. 94, 96-97, 564 S.E.2d 599, 602 (2002). Instead, the findings of fact "must be the `specific ultimate facts . . . sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence.'" Id. at 97, 564 S.E.2d at 602 (quoting Montgomery v. Montgomery, 32 N.C. App. 154, 156-57, 231 S.E.2d 26, 28 (1977)).
In the instant case, although the trial court's "findings of fact" are mixed findings of fact and conclusions of law, it is clear which portions of the trial court's "findings of fact" are actually findings of fact and which portions are actually conclusions of law. Furthermore, although portions of the findings of fact recite allegations contained in the petition and the statute, it is clear from the findings of fact that the trial court determined that the allegations were true and that the statutory grounds for termination were met. The trial court's detailedfindings of fact are not ambiguous, and they allow this Court to clearly examine the "final resulting effect reached by [the trial court's] processes of logical reasoning from the evidentiary facts." Appalachian Poster Advertising Co. v. Harrington, 89 N.C. App. 476, 479, 366 S.E.2d 705, 707 (1988). Thus, we conclude that the trial court's order satisfies the requirements of Rule 52(a) and Anderson.
Respondent maintains that the trial court's order should be reversed because the order contains no findings of fact to support the determination that "sufficient grounds exist for termination of parental rights . . . pursuant to N.C.G.S. 7B-1111(a)(7)." However, as detailed below, we conclude that the trial court's decision to terminate parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) was supported by sufficient findings of fact. Thus, we need not consider the trial court's decision nor its findings of fact regarding termination of respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). In re Shepard, ___ N.C. App. ___, ___, 591 S.E.2d 1, 8 (2004).
Termination of parental rights involves a two-stage process. In re Locklear, 151 N.C. App. 573, 575, 566 S.E.2d 165, 166 (2002). The petitioner must first establish by clear, cogent, and convincing evidence that grounds exist to terminate parental rights. In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). A determination that any one of those grounds listed in N.C. Gen. Stat. § 7B-1111 exists is sufficient to support termination of parental rights. In re Williamson, 91 N.C. App.668, 678, 373 S.E.2d 317, 322-23 (1988).
N.C. Gen. Stat. § 7B-1111(a)(1) authorizes the trial court to terminate a respondent's parental rights upon finding that the respondent "has abused or neglected the juvenile." N.C. Gen. Stat. § 7B-101(15) (2003) defines a "neglected juvenile" as follows:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
"In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984). However, because "[n]eglect may be manifested in ways less tangible than failure to provide physical necessities[,] . . . the trial judge may consider . . . a parent's complete failure to provide the personal contact, love, and affection that inheres in the parental relationship." In re Apa, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982). Nevertheless, "the fact that the parent loves or is concerned about [the] child will not necessarily prevent the court from making a determination that the child is neglected." Montgomery, 311 N.C. at 109, 316 S.E.2d at 252.
In the instant case, the trial court found that respondent continued to request that DSS place Alex in the home ofrespondent's aunt, Dana[2] , despite the fact that DSS had previously informed respondent that placement of Alex in Dana's home would not be allowed because Dana had been previously convicted of murder. The trial court also found that although DSS initially allowed Alex to visit Dana, DSS determined that Dana's home was not suitable for visits by Alex upon learning that Dana's son, who had previously been convicted of a sex offense, had been allowed to move back into Dana's home. When DSS notified respondent of this information, respondent nevertheless continued to request that DSS place Alex in Dana's home. The trial court further found that respondent wrote to DSS on two separate occasions and stated that she was concerned about the "negative influence" that Alex's great-grandparents were having on Alex during their visits with Alex. Although the great-grandparents had previously been given custody of Alex, they subsequently requested that Alex be placed in DSS custody on 10 November 1998 due to his "extremely disruptive behavior." Despite respondent's belief that Alex's great-grandparents were negative influences and were encouraging Alex to be "violent" towards his foster parents, respondent continued to recommend placement of Alex in either Dana's home or the great-grandparents' home, even after notifying DSS of her concerns about Alex's great-grandparents. Finally, the trial court found that although respondent had written letters to Alex "sporadically the first two years and almost monthly during the current year," respondent "rarely" saw Alex from1992 through 1998, had not seen Alex since he entered DSS custody, and "never acknowledged his birthday or sent him a gift."
Respondent's sporadic writing to Alex and her failure to acknowledge Alex's birthdays or send him gifts evidences a lack of the "personal contact, love, and affection that [ordinarily exists] in the parental relationship." Apa, 59 N.C. App. at 324, 296 S.E.2d at 813 (1982); see In re Yocum, 158 N.C. App. 198, 204, 580 S.E.2d 399, 403 (2003) (evidence that respondent "did not send the minor child any gift or other type of acknowledgment on her birthday" and "had limited contact with the minor child since her birth" supported determination of neglect). Furthermore, respondent's continued attempts to place Alex in homes and situations considered dangerous and undesirable by DSS evidences a lack of concern for Alex's welfare. "An individual's `lack of parental concern for [their] child' is simply an alternate way of stating that the individual has failed to exercise proper care, supervision, and discipline as to that child." Williamson, 91 N.C. App. at 675, 373 S.E.2d at 320. We conclude that the trial court's findings of fact support its determination that respondent neglected Alex. Therefore, we hold that the trial court did not err in concluding that sufficient grounds exist to terminate respondent's parental rights.
Respondent's final argument is that the trial court erred in determining that it was in Alex's best interests to terminate respondent's parental rights. We disagree.
When the petitioner succeeds in establishing the existence ofany one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111, the trial court moves to the disposition stage, where the trial court must determine "whether it is in the best interests of the child to terminate the parental rights." Young, 346 N.C. at 247, 485 S.E.2d at 615. Because the trial court directly observes the evidence as it is presented and the demeanor and characteristics of the witnesses, this Court reviews the trial court's decision under an abuse of discretion standard. In re Allred, 122 N.C. App. 561, 569, 471 S.E.2d 84, 88 (1996). Based upon the record in the instant case, we conclude that the trial court did not abuse its discretion in determining that it was in Alex's best interests to terminate respondent's parental rights. Therefore, we hold that the trial court did not err in ordering termination of respondent's parental rights.
Affirmed.
Judges LEVINSON and THORNBURG concur.
Report per Rule 30(e).

For the purposes of this opinion, we will refer to the minor child as "Alex," a pseudonym.

For the purposes of this opinion, we will refer to respondent's aunt as "Dana," a pseudonym.