McCULLOUGH, Judge.
Respondents appeal from an order which terminated their parental rights. C.N.S. was born on 27 December 1996, and B.N.S. was born on 4 April 1999. Respondent parents have had substantial drug addiction problems, and the couple has also been homeless. In fact, respondent mother told a social worker that she used drugs while she was pregnant with C.N.S. and B.N.S.
After the New Hanover County Department of Social Services (New Hanover DSS) became involved, the couple continued to deal with these issues. New Hanover DSS referred both parents for a substance abuse assessment and directed them to follow up with recommended treatment. Respondent mother went for an initial appointment, but she did not follow through. Respondent father did not acknowledge that he had a problem at that time. The lastvisitation between the parents and children occurred on 7 March 2001.
There was no direct communication between respondents and New Hanover DSS from September of 2001 until after the filing of the petitions to terminate parental rights. In May of 2002, respondents left Wilmington, North Carolina, on foot. They caught rides and made Greenville, North Carolina, their destination.
On 12 July 2002, respondents gave birth to T.N.S. The infant tested positive for cocaine. A representative from the Pitt County Department of Social Services, Becky Starkey, discussed respondents' case plan regarding T.N.S. Although reunification with T.N.S. was a possibility, Starkey expressed "major concerns" about respondents' reunification with any additional children, such as C.N.S. and B.N.S. Starkey cited respondents' history as the reason for her concern.
On 26 July 2002, New Hanover DSS filed a petition to terminate parental rights, and on 15 November 2002, respondents' parental rights were terminated. Respondents appeal. On appeal, respondents argue that the trial court erred by: (1) finding that there were grounds for termination; (2) unfairly comparing the foster family with the birth parents; (3) failing to comply with N.C. Gen. Stat. § 7B-1104(7); and (4) determining that findings of fact 4, 6, 7, and 16 were supported by clear, cogent, and convincing evidence. We disagree and affirm the decision of the trial court.
"Although severing parental ties is a harsh judicial remedy, the best interests of the children must be considered paramount." In re Adcock, 69 N.C. App. 222, 227, 316 S.E.2d 347, 350 (1984). The termination of parental rights is a two-step procedure. N.C. Gen. Stat. § 7B-1110 (2003). During the adjudication phase, the petitioner seeking termination must show by clear, cogent, and convincing evidence that grounds exist to terminate parental rights. In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). N.C. Gen. Stat. § 7B-1111 (2003) lists the grounds for terminating parental rights, and a finding of any one of those grounds is sufficient to support termination. In re Williamson, 91 N.C. App. 668, 678, 373 S.E.2d 317, 322-23 (1988). If the petitioner succeeds in establishing one of these grounds, the trial court moves to the second stage where it determines "whether it is in the best interests of the child to terminate [] parental rights." Young, 346 N.C. at 247, 485 S.E.2d at 615.
On appeal, "[t]he standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." In re Clark, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984). If the petitioner meets his burden and the trial court's findings of fact support any one of the grounds in N.C. Gen. Stat. § 7B-1111, we should affirm the order terminating the parent's rights. In re Swisher, 74 N.C. App. 239, 240, 328 S.E.2d 33, 35 (1985) (stating this standard with regard to N.C. Gen. Stat. § 7A-289.32, which was repealed. See now N.C. Gen. Stat. § 7B-1111 (2003)). We turn to consider the arguments of the parties.
I. Grounds for Termination
Both respondents argue that there were no grounds to terminate their parental rights. A "court may terminate the parental rights upon a finding . . . [that] [t]he parent has . . . neglected the juvenile. The juvenile shall be deemed to be . . . neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101[.]" N.C. Gen. Stat. § 7B-1111(a)(1) (2003). A neglected juvenile is "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2003).
In the present case, there is clear, cogent, and convincing evidence that respondents neglected the children. Respondents have been substance abusers throughout the ten years of their relationship. This impacted the children adversely because it impeded respondents' ability to maintain stable housing for them. In fact, respondents have been evicted from residences, lived in shelters, and struggled with homelessness.
Respondent mother claims that the trial court failed to show that any neglect, even if it happened in the past, could reasonably happen again. "[T]he trial court must . . . consider evidence of changed conditions in light of the history of neglect by the parent, and the probability of a repetition of neglect." In re Pierce, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002). We believe that the trial court did consider evidence of changed conditions when it noted, "As ofthe date of this hearing, neither respondent has made sufficient substantial progress under the circumstances to allow the court to place the child within their home within a reasonable time." Furthermore, the probability of a repetition of neglect was high given respondents' history of drug abuse. We conclude that the trial court's determination that the children were neglected was supported by clear, cogent, and convincing evidence. Since we have found one basis for the termination of parental rights, we need not consider whether termination was appropriate based on any of the other statutory grounds. In re Davis, 116 N.C. App. 409, 413, 448 S.E.2d 303, 305, disc. review denied, 338 N.C. 516, 452 S.E.2d 808 (1994).
II. Independent Evaluation of the Birth Parents
Respondent mother contends that during the best interests phase, the trial court unfairly compared the foster family with the birth parents instead of independently evaluating the birth parents. "The decision of whether to terminate parental rights should not be relegated to a choice between the natural parent and the foster family." In re Nesbitt, 147 N.C. App. 349, 360-61, 555 S.E.2d 659, 667 (2001). However, in the present case, the trial court did conduct an independent evaluation of respondents' fitness to be parents. The court determined that respondents' struggles with homelessness, unemployment, and drug addiction made them either unable or unwilling to take care of their children. Because respondents were not able to provide adequately for C.N.S. and B.N.S., it was appropriate for the court to consider the fosterparents under the best interests standard. Accordingly, this assignment of error is without merit.
III. Compliance with N.C. Gen. Stat. § 7B-1104(7)
Respondent mother argues that the petition to terminate parental rights failed to comply with N.C. Gen. Stat. § 7B-1104(7) (2003). We disagree. A petition to terminate parental rights shall state that it "has not been filed to circumvent the provisions of Article 2 of Chapter 50A of the General Statutes, the Uniform Child-Custody Jurisdiction and Enforcement Act." N.C. Gen. Stat. § 7B-1104(7). Our review of the record indicates that the petition to terminate parental rights contains this exact statement. Therefore, this assignment of error is rejected.
Respondent father's remaining arguments assert that the trial court's findings of fact were not supported by clear, cogent, and convincing evidence. We turn to consider each disputed finding of fact.
IV. Finding of Fact 4
Respondent father takes issue with finding of fact 4 which states "[t]hat Respondents, over the course of their children's lives did not have stable housing nor stable employment." However, evidence in the record supports this determination. A social worker for the New Hanover County Department of Social Services, Georgia Cummings, explained that although the family originally resided in a house on North Seventh Street, they were evicted shortly after Cummings met with them the first time. Cummings' testimony reveals that these troubles continued:
Q. Okay. After the North 7th Street address, what other address did you have for [respondents]?
A. They were homeless after they left that home, and the addresses were very sporadic. . . .
At one point, they were staying at the Salvation Army. I mean, they were like they're homeless and staying at various friends's [sic] homes. At one point they gave me an address on Eastwood Road, and I know that I went out to the home, or to the address they gave me. It was a bogus address.
Q. When you say it was a bogus address, did the address not exist? What?
A. Correct.
This testimony supports the trial court's finding that respondents did not have stable housing.
In spite of respondent father's claims to the contrary, there was also evidence which suggested that unemployment contributed to the lack of stable housing. Cummings indicated that part of respondents' case plan involved obtaining stable employment because it "would also allow them to obtain stable housing[.]"
Respondent father also disputes the trial court's finding that the parents were affected by substance abuse and that the children were born with drugs in their systems. However, respondent mother told a social worker that she used drugs while she was pregnant with C.N.S. and B.N.S. Moreover, evidence in the record reveals that drug use was an ongoing problem. Respondent mother acknowledged that both parents continued to use drugs through 20 April 2002. We conclude that finding of fact 4 was supported byclear, cogent, and convincing evidence. Therefore, this assignment of error is rejected.
V. Finding of Fact 6
Respondent father disagrees with finding of fact 6 which indicated that respondent father did not complete drug treatment. However, respondent father admitted under oath that drug treatment conflicted with his work schedule. He acknowledged, "So, I ain't really went right, you know." This assignment of error is dismissed.
VI. Finding of Fact 7
Respondent father argues that finding of fact 7 was not supported by sufficient evidence. We disagree. Finding of fact 7 was actually comprised of 19 different lines. In this lengthy finding, the trial court determined that: (1) "neither Respondent had met any of the objectives of the [case] plan"; (2) "[n]either parent was involved in any treatment for substance abuse"; (3) "[r]espondent parents appeared to be homeless"; (4) respondents admitted that they were "homeless and residing from place to place with acquaintances"; and (5) "a drug screen taken 19 January 2001, was positive for cocaine metabolites."
Significantly, respondent father only objected to the portion of the finding dealing with the drug screen taken in January of 2001; respondent father argues that the result of this test was negative, not positive. After thoroughly reviewing the record, we are unable to find a copy of the results of this test. However, even if we assume arguendo that this individual drug test wasnegative, it is difficult to imagine how this would impact the outcome of this case. Respondents have admitted that their long history of drug abuse led them to be homeless and unemployed. Moreover, the trial court made numerous other findings which showed how the children were adversely affected by this behavior. Finally, we have already concluded that the trial court's basis for termination (that the children were neglected) was supported by clear, cogent, and convincing evidence. This assignment of error is rejected.
VII. Finding of Fact 16
Respondent father disputes a portion of finding of fact 16 which states: "[t]hat [C.N.S.] feels safe and comfortable in her foster home and regards her foster parents as parents." However, Georgia Cummings testified about how the children reacted to their foster family: "They [the children] have developed relationships with their current foster family who they identify as their mother, and they are very happy and doing well in every area of their life, educationally, emotionally, physically . . . ." We conclude that this is sufficient evidence to sustain the finding.
We have carefully reviewed the remaining arguments of respondents and conclude that they are meritless. Therefore, the trial court's order terminating the parental rights of respondents is
Affirmed.
Judges BRYANT and ELMORE concur.
Report per Rule 30(e).