LEVINSON, Judge.
Respondent mother appeals from a district court order terminating her parental rights to the minor child M.L.B. We affirm.
M.L.B. was born on 14 October 2002. He was born cocaine-positive. He was the eighth child born to respondent. Respondent's parental rights to her other seven children had previously been terminated by district court order.
On 17 October 2002, the Guilford County Department of Social Services (DSS) assumed non-secure custody of M.L.B. Respondent agreed to a case plan for reunification on 5 November 2002. The case plan required that she continue to seek treatment with Alcohol and Drug Services (ADS), submit to random drug screens uponrequest, secure and maintain stable housing, notify DSS of any address changes within forty-eight hours, seek and maintain employment, pay child support, and obtain a parenting assessment and follow through with any recommendations. On 25 November 2002, the district court adjudicated M.L.B. to be neglected and dependent; respondent was ordered to comply with the case plan for reunification.
The district court held a review hearing on 6 March 2003. Respondent did not attend this hearing. As of the date of the hearing, respondent did not have a confirmed address and had spoken to her attorney only once since the previous hearing. She had not been in contact with DSS despite attempts by the agency to contact her. Respondent was not in compliance with her case plan in that she had attended only three of twenty-four classes at ADS, was not paying child support, was working only part-time, had not followed through with a parenting assessment, and had not visited with M.L.B. in approximately two months. The district court ordered that the child remain in the custody of DSS.
On 29 May 2003, the district court conducted a permanency planning review hearing. Respondent was not present at this hearing because she left court early and did not return to court until after the case was heard. As of this hearing, respondent had not followed through with any of the terms of her case plan. Though she had scheduled a visit with the child, respondent did not show up for the visit. A social worker at DSS had tried to meet with respondent to update her case plan, but respondent indicatedthat she had a medical appointment and did not have time to update the plan. Though she offered to call the social worker later to schedule another appointment to discuss the plan, respondent did not contact the social worker. After the permanency planning hearing, the trial court ordered DSS to pursue termination of the parental rights of both of M.L.B.'s parents. DSS filed a petition to terminate the parental rights of M.L.B.'s biological parents on 5 May 2003.[1]
On 14 August 2003, the district court conducted a permanency planning review hearing. At this hearing, respondent indicated that she had procured employment and had completed three parenting classes. The district court found that respondent was not paying child support but that she was renting a house and had finally began substance abuse treatment in June 2003 despite her continuing denial of a history of drug use. The court further found that M.L.B. had been placed with maternal relatives, that this placement was going "extremely well", and that the maternal relatives had evinced a willingness to adopt M.L.B. if necessary. The court ordered DSS to continue to pursue the termination of the parental rights of M.L.B.'s biological parents.
The petition to terminate respondent's parental rights as to M.L.B. was called for hearing on 11 September 2003. Respondent appeared at the hearing and requested appointment of counsel. Thedistrict court appointed counsel and continued the matter until 20 October 2003.
On 20 October 2003, the petition to terminate respondent's parental rights was again called for hearing. Respondent was not present in court. Her attorney informed the court that respondent had left him a voice mail message the night before in which she indicated that she would be present for the hearing. All of the other parties were present and ready to proceed. Though the hearing was scheduled to begin at 9:00 a.m., the court waited until 9:35 a.m. to begin the hearing. The mother did not appear before that time. After the first witness was called, but prior to any testimony, defense counsel made a motion to continue based on respondent's absence. The court denied this motion.
By an order entered 28 October 2003, the trial court concluded that clear, cogent, and convincing evidence existed to support terminating respondent's parental rights to M.L.B. pursuant to the following grounds: (1) respondent neglected the child; (2) the child was placed in the custody of DSS and respondent willfully failed to pay a reasonable portion of the cost of care for the child although physically and financially able to do so; (3) respondent willfully abandoned the child for at least 6 consecutive months immediately preceding the filing of the petition; and (4) respondent's parental rights to seven other children were terminated involuntarily by a court of competent jurisdiction and respondent lacked the ability or willingness to establish a safe home. The trial court found that M.L.B was in a "potentialadoptive, relative placement," that he was doing well in foster care, and that respondent had failed to successfully address her substance abuse problem. The trial court concluded that it was in the best interest of the child that respondent's parental rights be terminated. Accordingly, respondent's parental rights as to M.L.B. were terminated.
Respondent now appeals, contending that the trial court erred by (1) denying her motion to continue, (2) denying her an opportunity to present evidence, and (3) finding and concluding that there was sufficient evidence to support the alleged grounds for terminating her parental rights and determining that her parental rights to M.L.B. should be terminated. We are unpersuaded by these contentions.
_____________________________________
We first address respondent's contention that the trial court abused its discretion and violated her rights by denying her motion to continue. We disagree.
Continuances in termination of parental rights proceedings are governed by the following statutory provision:
The court may for good cause shown continue the hearing for up to 90 days from the date of the initial petition in order to receive additional evidence including any reports or assessments that the court has requested, to allow the parties to conduct expeditious discovery, or to receive any other information needed in the best interests of the juvenile. Continuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice, and the court shall issue a written order stating the grounds for granting the continuance.
N.C.G.S. § 7B-1109(d) (2003). "A motion for a continuance is ordinarily addressed to the sound discretion of the trial judge, and the ruling will not be disturbed absent a showing of abuse of discretion." State v. Beck, 346 N.C. 750, 756, 487 S.E.2d 751, 755 (1997). "Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice." In re Humphrey, 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003) (citation omitted). "[I]f a motion to continue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal." State v. Jones, 342 N.C. 523, 530-31, 467 S.E.2d 12, 17 (1996) (citation and internal quotation marks omitted).
In the instant case, the hearing on the petition had already been continued at least once. Defense counsel had not filed a written motion to continue but rather had the following colloquy with the trial judge after the hearing on the petition to terminate parental rights had already begun:
COUNSEL: Just for the record, I'd like to make a motion to continue. My client did know about the hearing today. She called and left me a message last night about six o'clock, so I had no idea why she's not here this morning. I don't know if she's had some type of emergency or what. But she did know about the hearing and planned on being here.
THE COURT: All right. Well, . . . we normally start at nine, and its now nine thirty-five. We've waited a little while to see if maybe she would show up and she's not here, and I feel like we need to go ahead and go forward. So I'm going to denyyour motion to continue the case, but it'll be noted for the record.
No reason was given for respondent's absence at the time the matter was called for hearing. There is nothing in the record suggesting respondent made any effort to contact her attorney or the Clerk of Court's office to inform them of the reason she was not present. Subsequently, in a letter provided to her attorney and incorporated into the record on appeal, respondent attributed her absence to the tardiness of the cab that was scheduled to pick her up and to traffic problems en route to the courthouse. However, respondent did not arrive at the courthouse prior to the end of the hearing.
Thus, the record reveals that respondent had actual knowledge of the hearing but was nevertheless absent. Neither respondent nor her attorney provided the trial court with a reason for her absence at the time the oral motion to continue was made. [2] The trial court delayed the hearing to make some allowance for tardiness. On these facts, we are unpersuaded that the trial court either abused its discretion or denied respondent's substantial rights by denying her motion to continue. This assignment of error is overruled.
____________________________________
We next address respondent's argument that the trial court committed reversible error and violated her substantial rights when it "denied her attorney's request to present evidence" during the adjudicatory grounds phase of the termination of parental rights proceeding. This contention is without merit.
The hearing transcript indicates that, after DSS presented its evidence in the adjudication phase of the hearing, respondent's counsel stated that he would like to call respondent as a witness. The trial court noted that respondent was absent. The following colloquy then ensued:
COUNSEL: The only-I don't know procedurally since my client is not here. I do have a letter that she gave me at one of the reviews from her doctor stating that she . . . was unable to work from December 29th [until] April 23rd. She's not here. It's from a Dr. Cullon . . . . But other than that, that's the only evidence that I've got. . . .
COURT: So actually what you have there is [an] out of court statement offered to prove the truth of the matter asserted?
COUNSEL: Right. . . .
COURT: No business record, no custodian with whom to authenticate?
COUNSEL: No, I have no custodian.
COURT: Well, I'm sorry, I'll have to deny your request to admit that.
Respondent contends that her due process rights were violated because she was not given an opportunity to testify and present the letters from her doctor proving her inability to work between 29 December 2002 and 23 April 2003. We observe that the trial court did not refuse to permit respondent to testify; rather, respondent's absence prevented her from testifying. As such, her discussion of cases where trial courts prevented biological parents from testifying is misplaced. See In re Faircloth, 153 N.C. App. 565, 572-73, 571 S.E.2d 65, 70-71 (2002) (overruling respondent's assignment of error to the trial court's decision to remove respondent from courtroom for repeated misconduct without providing a means for him to personally participate in the remainder of the hearing); In re Murphy, 105 N.C. App. 651, 656-57, 414 S.E.2d 396, 399-400 (affirming trial court's denial of motion by counsel to have respondent transported from incarceration facility to testify in termination of parental rights hearing), aff'd per curiam, 332 N.C. 663, 422 S.E.2d 577 (1992). In the instant case, we conclude that the trial court did not take any action that violated respondent's due process rights with respect to her ability to testify. Moreover, we conclude that the trial court properly declined to accept letters allegedly prepared by respondent's doctor where no foundation for the letters had been provided and the letters were hearsay. See N.C.G.S. § 8C-1, Rule 802 (2003) (providing that hearsay is generally inadmissible); N.C.G.S. § 8C-1, Rule 901 (2003) (requiring that documentary evidence be authenticated or identified). This assignment of error is overruled.
_________________________________________
We next address respondent's arguments that the trial court erred in finding and concluding that there were grounds toterminate her parental rights and abused its discretion in determining that her parental rights should be terminated. These contentions lack merit.
This Court reviews a trial court order terminating parental rights for whether the findings of fact are supported by clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental rights should be terminated for one of the grounds set forth in N.C.G.S. § 7B-1111(a) (2003). In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). Where a trial court concludes that parental rights should be terminated pursuant to several of the grounds set forth in G.S. § 7B-1111(a), the order of termination will be affirmed if the court's conclusion with respect to any one of the statutory grounds is supported by valid findings of fact. In re Swisher, 74 N.C. App. 239, 240-41, 328 S.E.2d 33, 34-35 (1985).
If the trial court determines that there are grounds to terminate parental rights, "the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated." N.C.G.S. § 7B-1110(a) (2003). The "best interests" determination is consigned to the discretion of the trial court and is reviewed in this Court for an abuse of that discretion. See In re Tyson, 76 N.C. App. 411, 419, 333 S.E.2d 554, 559 (1985).
Pursuant to our General Statutes: [A] court may terminate . . . parental rights upon a finding . . . [that] [t]he parental rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home.
N.C.G.S. § 7B-1111(a)(9) (2003).
In the instant case, the evidence presented to the trial court tended to show the following: Respondent's parental rights as to seven other children were involuntarily terminated by the Guilford County District Court. The primary issue regarding termination of respondent's parental rights as to those children was her failure to address her drug and alcohol abuse. As of March 2003, respondent had attended only three out of twenty-four scheduled classes with ADS. Though respondent subsequently completed the Intensive Outpatient Women's Program at ADS, she provided no verification that she had complied with recommendations to attend dependency support group meetings. Though respondent submitted three urine samples that tested negative for illegal substances between June and August 2003, she was infrequently in contact with DSS and further drug testing was not done. Attempts by DSS to verify respondent's housing arrangements were unsuccessful. Respondent reported that she was renting a house in which she lived with her landlord, but subsequently indicated that she lived there alone. DSS representatives attempted to visit respondent's home, but were unsuccessful in finding her there. On one occasion, DSS found the person alleged to be M.L.B.'s biological father at respondent's alleged address; he informed DSS that respondent didnot reside there. Respondent's employer informed DSS that respondent had occasionally worked in the past but was no longer working.
The trial court made a finding that, pursuant to G.S. § 7B-1111(a)(9), respondent's parental rights to other children had been terminated and she lacked the ability or willingness to establish a safe home for M.L.B. The trial court specifically found that "[t]he [respondent] continues to be unable and/or unwilling to address her substance abuse issues and has not established a safe home environment for the child." The trial court concluded that "[t]he grounds . . . alleged in the Petition to Terminate Parental Rights . . . with regard to [respondent] . . . have been proved by clear, cogent and convincing evidence."
We hold that the trial court did not err in finding and concluding that there were grounds to terminate respondent's parental rights as to M.L.B. pursuant to G.S. § 7B-1111(a)(9). Because the trial court's conclusion is supported by the findings of fact, which are in turn supported by clear, cogent, and convincing evidence, we need not address the other grounds pursuant to which respondent's parental rights to M.L.B. were terminated. Moreover, we discern no abuse of discretion by the trial court in concluding that respondent's parental rights as to M.L.B. should be terminated. The corresponding assignments of error are overruled.
Affirmed.
Judges TYSON and BRYANT concur.
Report per Rule 30(e).

The present case involves only the mother's appeal from the order terminating her parental rights as to M.L.B.

We note that this Court has held that a trial court did not abuse its discretion in denying a motion to continue a hearing on a petition to terminate parental rights where, as here, "respondent's absence was voluntary or through her own negligence in failing to obtain adequate transportation." In re Mitchell, 148 N.C. App. 483, 487, 559 S.E.2d 237, 240, rev'd per curiam on other grounds, 356 N.C. 288-89, 570 S.E.2d 212 (2002). In Mitchell, the trial court was informed that the respondent was not present because of lack of transportation.