IN RE: ERICA RENEE WILLIAMSON (A MINOR CHILD) BORN: FEBRUARY 3, 1981

ARTHUR CLARK AND MELISSA CLARK, PETITIONERS v. CHARLES FRED WILLIAMSON, RESPONDENT

No. 8826DC160

(Filed 1 November 1988)

1. **Parent and Child § 1.6— termination of parental rights—finding of neglect not negated by evidence**

     Evidence in a proceeding to terminate parental rights that respondent, in correspondence with his sister, inquired about the child and stated that he loved her did not necessarily negate the court's finding that the child had been neglected.

In re Williamson

**2. Parent and Child § 1.6— termination of parental rights—conclusion of lack of parental concern**

The trial court in a proceeding to terminate parental rights did not err in concluding that respondent "acted in such a way as to evince a lack of parental concern for the child" since such language was simply an alternate way of stating that respondent has failed to exercise proper care, supervision and discipline of the child within the meaning of N.C.G.S. § 7A-517(21).

**3. Parent and Child § 1.6— termination of parental rights—neglect of child—sufficiency of findings**

The trial court's conclusion in a proceeding to terminate parental rights that respondent "acted in such a way as to evince a lack of parental concern for the child" and thus neglected the child within the meaning of N.C.G.S. §§ 7A-289.32(2) and 7A-517(21) was supported by findings that respondent had little if any contact with the child in the year preceding his murder of the child's mother; respondent has been incarcerated since the murder; respondent has twice given his consent for the child's adoption by his sister and her husband; and respondent has known for some five years that the child was in petitioners' custody but has made no effort to contact petitioners, to send support for the child to petitioners, or to establish any verbal or written communication with the child.

**4. Parent and Child § 1.5— termination of parental rights—prior finding that child "dependent"—finding of neglect not precluded**

The trial court in a proceeding to terminate parental rights was not precluded from adjudicating that the child was "neglected" pursuant to N.C.G.S. §§ 7A-289.32(2) and 7A-517(21) because of earlier district court orders concluding that the child was "dependent" as defined in N.C.G.S. § 7A-517(13).

**5. Parent and Child § 1.6— termination of parental rights—neglected child—murder of child's mother and incarceration not sole factor**

The trial court did not improperly rely solely on respondent's murder of his child's mother and his subsequent incarceration in determining that the child was "neglected" where the record shows that the court also considered respondent's actions and other circumstances since the murder in concluding that respondent neglected and abandoned his child.

**6. Parent and Child § 1.6— termination of parental rights—neglect—finding of failure to pay costs immaterial**

Where the trial court's order terminating parental rights was supported by a valid determination that the child was neglected, the court's reference to the statute relating to the failure to pay a reasonable portion of the child's care costs, N.C.G.S. § 7A-289.32(4), was immaterial.

**7. Parent and Child § 1.6— termination of parental rights—plan to adopt finding unnecessary**

The trial court's finding in an order terminating parental rights that petitioners plan to adopt the child was unnecessary because petitioners met other criteria for instituting a proceeding to terminate respondent's parental rights; furthermore, there was sufficient evidence in the record to support such finding.

8. **Parent, and Child § 1.6— termination of parental rights—statement of standard of proof**

The trial court complied with N.C.G.S. §§ 7A-635 and 7A-637 in an order terminating parental rights by stating that neglect of the child had been shown by "clear and convincing evidence," and the court was not also required to recite that its dispositional finding that the best interest of the child required termination of respondent's parental rights was discretionary.

9. **Attorneys at Law § 7.5; Rules of Civil Procedure § 11— attorney fees—Rule 11 amendment inapplicable**

The trial court could not award attorney fees pursuant to N.C.G.S. § 1A-1, Rule 11 where the amendment allowing such an award was not effective until after the filing of the claim for declaratory relief on which the award was based.

10. **Attorneys at Law § 7.5— attorney fees—absence of justiciable issue**

The trial court could properly award attorney fees to respondent under N.C.G.S. § 6-21.5 after petitioners voluntarily dismissed their claim for a declaratory judgment that respondent was not the biological father of a certain child where the claim was based on allegations that respondent and the child's mother were married only a few weeks prior to the birth of the child and that the child bears no physical resemblance to respondent, and where the record supported the trial court's finding that there was a complete absence of a justiciable issue of law or fact concerning respondent's paternity of the child.

11. **Attorneys at Law § 7.5— absence of justiciable issue—amount of attorney fees**

Where counsel appointed to represent respondent in a proceeding to terminate his parental rights also represented him in a related frivolous action by petitioners for a declaratory judgment as to paternity, the trial court erred in limiting the amount of attorney fees awarded to respondent in the paternity action under N.C.G.S. § 6-21.5 to the court-appointed rate of $35.00 per hour.

APPEAL by respondent and by petitioners from *Matus (T. Patrick, II), Judge.* Orders entered 22 September 1987 in District Court, MECKLENBURG County. Heard in the Court of Appeals 30 August 1988.

This is an appeal from an order terminating the parental rights of respondent as to his child Erica Renee Williamson (hereinafter Erica) and from an order for payment by petitioners of respondent's counsel fees in a related paternity action. The facts surrounding this appeal have been recited by this Court in a number of cases, including an appeal from Erica's initial custody decree, *In re Williamson,* 67 N.C. App. 184, 312 S.E. 2d 239 (1984); an appeal from an order modifying Erica's custody and guardianship, *In re Williamson,* 77 N.C. App. 53, 334 S.E. 2d 428 (1985), *disc. rev. denied,* 316 N.C. 194, 341 S.E. 2d 584 (1986); and an ap-

peal from respondent's criminal conviction for the murder of Erica's mother, *State v. Williamson*, 72 N.C. App. 657, 326 S.E. 2d 37 (1985).

The facts relevant to this appeal may be briefly outlined as follows. Respondent and Erica's mother, Joan Brown Williamson, were married in January of 1981, approximately one month before Erica's birth. The couple lived together for a number of months, then separated. The record contains evidence that respondent had a history of alcohol and drug abuse, and during the period after his separation from Erica's mother, he participated in two treatment programs, one in North Carolina and one in Texas. During this time, respondent had little or no contact with Erica. In 1982, respondent returned to North Carolina and sought visitation rights with Erica. On 30 April 1982, immediately following a hearing to determine his visitation rights, respondent shot and killed Erica's mother near the Columbus County Courthouse. Respondent pleaded guilty to second degree murder and is currently serving an active sentence in the North Carolina Department of Correction.

On 30 April 1982, Erica was made a ward of the juvenile court, and in May 1982, when Erica was sixteen months old, she was adjudicated a dependent child and placed in the temporary custody of the Columbus County Department of Social Services. Several placements were considered for Erica, including one with respondent's sister and her husband, and one with the first cousin of Erica's mother and her husband, petitioners in the case now before us. Erica was ultimately placed with petitioners.

On 23 October 1986, petitioners commenced this action by filing a verified complaint seeking a declaratory judgment that respondent is not the biological father of Erica; alternatively, petitioners filed a petition seeking termination of respondent's parental rights as to Erica based on abuse, neglect, and abandonment. On 24 April 1987, petitioners took a voluntary dismissal of the declaratory judgment action. After trial without a jury on the remaining matter, the trial judge made findings of fact and conclusions of law and granted petitioners' petition for termination of respondent's parental rights as to Erica. To this order, respondent appeals. In a separate order, the trial judge ordered petitioners to pay counsel fees incurred by respondent in defending

against the declaratory judgment action concerning Erica's paternity. To this order, both parties appeal.

*George Daly for petitioner-appellees and cross-appellants.*

*Joyce M. Brooks and John O. Pollard for respondent-appellant and cross-appellee.*

*Donald S. Gillespie, Jr., as Guardian ad Litem for Erica Renee Williamson, a minor child, appellee.*

PARKER, Judge.

In this appeal, respondent contends, in essence, that the trial court's conclusions of law — (i) that grounds exist to terminate respondent's parental rights as to Erica pursuant to G.S. 7A-289.32 and (ii) that it is in Erica's best interests that respondent's parental rights be terminated pursuant to G.S. 7A-289.31 — are not supported by appropriate findings of fact or sufficient evidence. Respondent also contends that the trial court erred in limiting the amount of attorney's fees awarded for defense of the declaratory judgment action as to the paternity of Erica to $35.00 per hour. Petitioners argue in their cross-appeal that the trial court erred in awarding respondent attorney's fees in the paternity action. We shall address the issues involving the termination of parental rights first.

I.

Order Terminating Parental Rights

In his brief, respondent first argues that he has not shown "a settled purpose to relinquish all parental claims" as to Erica in that while he has been incarcerated he has "repeatedly inquired about and requested visitation with his child." In his argument, respondent contends that the trial court erred in making the following conclusions of law:

> 4. In all matters for termination of parental rights, the burden of proof is always with the petitioner(s) to prove by clear and convincing evidence the existence of one or more circumstances which warrant termination (under G.S. 7A-289.32). In this case, the petitioners have proved the existence of "neglect" and "abandonment," which are statutory grounds for termination, G.S. 7A-289.32(2) and (4) respective-

In re Williamson

ly. The Court reaches the conclusions of law that these two grounds have been established by clear and convincing evidence.

5. Respondent murdered the mother (who was the caretaker and custodian of the child) and this placed the child in the status of a "neglected" child who required custody and care of Social Services. By the murder and following the murder, the father has acted in such a way as to evince a lack of parental concern for the child. He has totally withheld his love, affection, support and supervision from his child, in such a way as to show a settled purpose to forego all parental duties and relinquish all parental claims. Respondent has twice consented to adoption of his child by his sister, the last time being as recent as November or December 1986. In short, respondent has totally abandoned his child. His profession of "love" in letters to his sister and in this case in court does not dissipate the abandonment.

In a proceeding to terminate parental rights pursuant to G.S. Chap. 7A, Article 24B, the trial judge must find facts based on the evidence and make conclusions of law which resolve the ultimate issue whether neglect authorizing termination of parental rights is present at that time. *In re Ballard*, 311 N.C. 708, 716, 319 S.E. 2d 227, 232 (1984). Petitioners who seek termination have the burden of showing by clear, cogent, and convincing evidence that such neglect exists at the time of the termination proceeding. G.S. 7A-289.30(e). *Id.*

In the instant case, the trial court found as fact that for at least a year prior to the murder of Erica's mother and respondent's subsequent incarceration, "respondent had little if any contact with his minor child, who was residing with her mother"; that respondent has twice signed his consent for Erica's adoption by his sister and her husband; that since his incarceration, respondent has not seen Erica; that although respondent has known since September 1982 that Erica was in petitioners' custody, he has made no attempt to communicate with petitioners or to send any support or maintenance to petitioners for the benefit of the child; that although respondent has had limited resources while in prison, he has had sufficient funds available for corresponding with Erica or for acknowledging her birthday or other

special occasions; and that since September 1982, respondent has not had any verbal or written communication with Erica.

[1] Respondent does not attack the evidentiary bases for the court's findings, but rather respondent points to evidence in the record that would support different findings and would tend to lead to the conclusion that there are no grounds for termination of his parental rights. After careful review of the record in this case, we conclude that the trial court's findings of fact are supported by clear, cogent, and convincing evidence. When the court's findings of neglect are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary. *In re Montgomery*, 311 N.C. 101, 112-13, 316 S.E. 2d 246, 252-53 (1984). Moreover, while the evidence also shows that respondent frequently inquired about Erica and stated that he loved Erica in his correspondence with his sister, this evidence does not necessarily negate the court's finding that the child has been neglected. "[T]he fact that the parent loves or is concerned about his child will not necessarily prevent the court from making a determination that the child is neglected." *Id.* at 109, 316 S.E. 2d at 252.

[2] In his second argument, respondent contends that the trial court erred in concluding that respondent "acted in such a way as to evince a lack of parental concern for the child." Respondent argues, first, that "lack of parental concern" is not a proper ground for termination of parental rights under G.S. 7A-289.32 and, second, that the only finding of fact to support this conclusion is finding number twenty-three, that respondent "could have expressed his parental love and concern in more meaningful ways," a finding that is not supported by the evidence. We disagree with these contentions.

General Statute 7A-289.32 enumerates the alternative grounds for termination of parental rights. Among these grounds are that the parent abused or neglected the child, G.S. 7A-289.32(2), and that the parent willfully abandoned the child for at least six months immediately prior to the filing of the petition for termination, G.S. 7A-289.32(8). The term "neglected juvenile" is defined, in part, in G.S. 7A-517(21) as "[a] juvenile who does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned

. . . ." An individual's "lack of parental concern for his child" is simply an alternate way of stating that the individual has failed to exercise proper care, supervision, and discipline as to that child. Furthermore, abandonment is the willful neglect or refusal to provide parental care and support including the withholding of love and affection as well as financial support and maintenance. *See In re APA,* 59 N.C. App. 322, 296 S.E. 2d 811 (1982). Respondent's objections to the court's language in conclusion of law number five are totally without merit.

As to the second portion of respondent's argument, we first note that respondent's brief takes out of context and misquotes a portion of finding of fact number twenty-three. Finding of fact number twenty-three, in its entirety, states the following:

> 23. From his employment in the prison system the respondent earns presently one dollar per day and has been earning that sum for several months. Prior to this he made 40 cents per day for a period of eight to ten months and thereafter 70 cents per day. These sums have been paid to him weekly and have been used by him to purchase hygiene items such as toothpaste with the balance of his funds having been used to purchase drinks and snacks. The respondent also occasionally received sums of money from his sister. While recognizing that his funds have been limited, it is also clear that his expenses have been limited and there were in fact sufficient funds available for the respondent to use for the purpose of corresponding with his daughter or in acknowledging her birthdays or other special events. While such efforts by the respondent may have been difficult under the facts of this case they certainly would not have been impossible and would have resulted in more meaningful evidence of the respondent's interest in his daughter than his verbal assertions on the witness stand and his indirect inquiries and statements about his daughter made to his sister, Mrs. Britt in the numerous correspondences and conversations with Mrs. Britt.

There is sufficient clear, cogent, and convincing evidence in the record to support this finding. Respondent, however, contends that he could not correspond with Erica or acknowledge her birthday or other special occasions because he did not have her ad-

dress and because he had no "access to shopping facilities to make purchases suitable for a young child." Respondent further argues that any such attempt to correspond with Erica would have been futile because petitioners would oppose and prevent any such contact. These arguments are meritless.

There is ample evidence in the record that respondent knew of Erica's presence at petitioners' home as early as September 1982 and that he knew of the continuing contact of his attorney and his sister's attorney with petitioners and petitioners' attorney in the ongoing custody proceedings involving Erica. Moreover, the record contains more than eighty pages of respondent's letters to his sister and her family, providing abundant evidence that respondent could and did write letters and send cards to other family members. Finally, respondent clearly had the means to acknowledge Erica's birthday with a purchase "suitable for a young child," for, as the trial court points out in finding of fact number twenty-five, "Respondent sent one birthday card to the child but that was in the summer of 1983 and it was not to the child but to his sister." The court further notes, "The child's birthdate is in February."

[3] Finally, the trial court's finding of fact number twenty-three is not the only finding to support the conclusion that respondent "acted in such a way as to evince a lack of parental concern for the child." As noted above, the court found, among other findings, that respondent had little if any contact with Erica in the year preceding the murder of Erica's mother; that since the murder, respondent has been incarcerated; that respondent has twice given his consent for the child's adoption by his sister and her husband; that respondent has known that Erica was in petitioners' custody since September 1982; and that since September 1982, respondent has made no effort to contact petitioners, to send support for Erica to petitioners, or to establish any verbal or written communication with the child. These findings support the trial court's conclusion that respondent "acted in such a way as to evince a lack of parental concern for the child" and are sufficient to constitute neglect pursuant to G.S. 7A-289.32(2) and G.S. 7A-517(21).

[4] In his next argument, respondent contends that the trial court was precluded from adjudicating that Erica was "neglected"

pursuant to G.S. 7A-289.32(2) and 7A-517(21) because of the earlier district court orders which contained the conclusion of law that Erica was a "dependent" child as defined by G.S. 7A-517(13). Respondent argues that by its order finding statutory neglect, the court "overruled *sub silentio* a final binding order of another district court." This contention is without merit.

General Statute 7A-517(13) defines a "dependent juvenile" as "[a] juvenile in need of assistance or placement because he has no parent, guardian or custodian responsible for his care or supervision or whose parent, guardian, or custodian is unable to provide for his care or supervision." General Statute 7A-517(21) defines a "neglected juvenile" as:

> A juvenile who does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State law, or who lives in an environment injurious to his welfare, or who has been placed for care or adoption in violation of law.

These definitions are not mutually exclusive. A child may be both "dependent" and "neglected" within the definitions of G.S. 7A-517(13) and (21). Moreover, the issue adjudicated in determining that Erica was a dependent child was the need for a custodial arrangement following her mother's death. Here the issue is whether Erica has been neglected or abandoned by respondent.

[5] Respondent next argues that the trial court erred in basing its conclusion that Erica was a neglected juvenile solely on the fact that respondent murdered Erica's mother and caused Erica to require the custody and care of community social services. Respondent contends that "the trial court decided this case on the basis of its own belief that killing the custodial parent creates an immutable condition of neglect which an incarcerated parent can never remedy." This argument is without merit.

This Court has stated that while the fact that a parent has committed a crime which might result in incarceration is insufficient standing alone to show willful abandonment of the parent's child, the commission of a crime may be relevant or even determinative as to whether a parent has forfeited his parental rights

In re Williamson

under G.S. 7A-289.32(2). *In re Maynor*, 38 N.C. App. 724, 727, 248 S.E. 2d 875, 877 (1978). In the case before us, the trial court's findings and conclusions demonstrate that the court did not rely "solely" on the circumstance of respondent's murder of Erica's mother and his subsequent incarceration in making its determination that Erica was "neglected" pursuant to G.S. 7A-289.32(2). Although the court did consider the fact that respondent murdered Erica's caretaker and custodian causing Erica to require the custody and care of community social services as one factor in its determination, the court also considered respondent's actions and circumstances since the murder in drawing the conclusion that respondent neglected and abandoned his child.

[6] In his next assignment of error, respondent contends that the trial court erred in basing termination of parental rights on G.S. 7A-289.32(4) for failure to pay a reasonable portion of the child's care costs.

General Statute 7A-289.32 provides eight alternative bases for a court's termination of a party's parental rights. One of the alternative bases is a finding that the parent has abused or neglected the child. G.S. 7A-289.32(2). Another of the enumerated alternative grounds for termination of parental rights is G.S. 7A-289.32(4) which states the following:

> The child has been placed in the custody of a county Department of Social Services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition, has willfully failed for such period to pay a reasonable portion of the cost of care for the child although physically and financially able to do so.

In its order, the trial court made the conclusion of law that "the petitioners have proved the existence of 'neglect' and 'abandonment,' which are statutory grounds for termination, G.S. 7A-289.32(2) and (4) respectively." As respondent correctly points out and as petitioners concede, G.S. 7A-289.32(4) is inapplicable to the situation in the case now before us. This reference to G.S. 7A-289.32(4) is immaterial, however, since a valid finding on one of the eight grounds enumerated in G.S. 7A-289.32 is sufficient to support an order terminating parental rights. *See In re Moore*, 306 N.C. 394, 404, 293 S.E. 2d 127, 132 (1982), *appeal dismissed*,

In re Williamson

459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed. 2d 987 (1983); *In re Stewart Children*, 82 N.C. App. 651, 655, 347 S.E. 2d 495, 498 (1986). As we discussed earlier, the trial court's conclusion that Erica was neglected pursuant to G.S. 7A-289.32(2) was supported by findings based on clear, cogent, and convincing evidence; therefore we need not address respondent's challenge to the court's conclusion relating to G.S. 7A-289.32(4).

[7] In his sixth argument, respondent contends that the court erred in including in its order terminating his parental rights statements to the effect that petitioners plan to adopt Erica. Respondent contends this finding is not supported by clear, cogent, and convincing evidence. Respondent's argument is without merit.

We first note that proof of a petitioner's plan to adopt the child is not a prerequisite for the institution of a proceeding to terminate the parental rights of the child's parents. General Statute 7A-289.24 lists the parties who are entitled to petition for termination of parental rights. Among the possible petitioners listed is any person who has been judicially appointed as the guardian of the child, G.S. 7A-289.24(2); any person with whom the child has been living continuously for two years or more, G.S. 7A-289.24(5); and any person who has filed a petition for adoption after there has been a determination of abuse or neglect, G.S. 7A-289.24(7). As petitioners in this case fit the first two of the criteria listed above, it is unnecessary that they fit the last. Furthermore, there is sufficient evidence in the record to support the court's finding that petitioners intend to adopt Erica. Plaintiffs allege in their verified complaint that they intend to adopt Erica as soon as possible. Furthermore, respondent testified that petitioners' attorney contacted him prior to the commencement of this proceeding seeking his consent for petitioners' adoption of Erica. In addition, the custodian of Erica's two stepsisters, the current wife of Erica's mother's first husband, testified at trial that petitioners are trying to adopt Erica. Erica's kindergarten teacher also testified that she was aware of petitioners' intent to adopt Erica. This evidence is sufficient to support a finding by the trial court that petitioners planned to adopt Erica if possible.

[8] Respondent's final argument involving the order terminating parental rights involves the dispositional phase of the proceeding

in the trial court. Specifically, respondent contends that the trial court erred in failing to state the standard of proof employed in making its dispositional determination that the best interests of Erica require termination of respondent's parental rights. This argument is without merit.

General Statute 7A-289.31(a) provides the following:

> Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the child unless the court shall further determine that the best interests of the child require that the parental rights of such parent not be terminated.

Our Courts have recognized that a termination of parental rights proceeding involves a two-step process: an adjudication, governed by G.S. 7A-289.30 and a disposition, governed by G.S. 7A-289.31. *Montgomery*, 311 N.C. at 110, 316 S.E. 2d at 252; *In re White*, 81 N.C. App. 82, 85, 344 S.E. 2d 36, 38, *disc. rev. denied*, 318 N.C. 283, 347 S.E. 2d 470 (1986). At the adjudication stage, the petitioner must show the existence of one of the grounds for termination listed in G.S. 7A-289.32 by clear, cogent, and convincing evidence, G.S. 7A-289.30(e); at the disposition stage, the court's decision whether to terminate parental rights is discretionary. *Montgomery*, 311 N.C. at 110, 316 S.E. 2d at 252; *White*, 81 N.C. App. at 85, 344 S.E. 2d at 38.

This Court has held that G.S. 7A-635 and -637 require that the trial judge recite the standard of proof applied in a proceeding based on a petition alleging abuse, neglect, dependence, or undisciplined behavior. *In re Wheeler*, 87 N.C. App. 189, 193, 360 S.E. 2d 458, 460-61 (1987). In the case before us, the trial judge recited the appropriate standard for the finding of neglect pursuant to G.S. 7A-289.30(e) in his conclusions of law and concluded that petitioners had established grounds for neglect pursuant to G.S. 7A-289.32(2) "by clear and convincing evidence." The court thereafter made the following conclusion of law:

> The Court specifically finds and concludes that the best interests and welfare of the child would be promoted by termination of the father's rights so that the proposed adoption by Mr. and Mrs. Arthur Clark can proceed.

We hold that the court below met the requirement of G.S. 7A-635 and -637 by stating the standard used at the adjudication stage of the proceeding; the trial judge was not also required to recite that his decision at the disposition stage of the proceeding was discretionary.

For the foregoing reasons, we find that respondent's contentions regarding the order terminating his parental rights respecting Erica are without merit, and we affirm the order.

II.

Order Directing Payment of Attorney's Fees

At the time petitioners filed their petition for termination of parental rights, they also filed a claim for a declaratory judgment that respondent is not the biological father of Erica. This latter claim was based on two allegations: that respondent and the child's mother were married only a few weeks prior to the birth of the child and that the child bears no physical resemblance to respondent. In response, respondent filed two motions to dismiss the action, a motion for summary judgment on the paternity claim, and a motion for award of attorney's fees. On 24 April 1987, approximately six months after the paternity claim was filed, petitioners filed notice of a voluntary dismissal without prejudice of the declaratory judgment action regarding paternity pursuant to G.S. 1A-1, Rule 41(a)(1). After hearing argument on the matter, the trial judge ordered petitioners to pay $1,272.25, or $35.00 per hour for 36.35 hours, to respondent's attorney for the defense against petitioners' paternity claim. Petitioners contend that the trial court erred in entering this order; respondent contends that the trial court erred in awarding fees at the "state-paid rate" of $35.00 per hour rather than at the market rate acknowledged by the court in its order to be $95.00 per hour. We shall address petitioners' cross-appeal argument first.

[9] Petitioners first contend that the court could not award attorney's fees pursuant to G.S. 1A-1, Rule 11, recently amended to permit such awards, because the Rule 11 amendment was not effective until after the filing of the claim for declaratory relief on which the award was based. With this contention we agree.

The amendment of Rule 11 of the North Carolina Rules of Civil Procedure was expressly made effective 1 January 1987 and

is "applicable to pleadings, motions, or papers filed on or after that date." G.S. 1A-1, Rule 11 (effective date note). The claim seeking declaratory relief was filed 23 October 1986. While some of the time for which respondent's attorney was to be reimbursed elapsed after the effective date of the amendment, the order directing payment of counsel fees was based on the claim that was filed before the effective date. Therefore, the trial judge erred in citing Rule 11 of the North Carolina Rules of Civil Procedure as a basis for his order.

[10] This error does not, however, mandate that the court's order be vacated. The trial court also cited G.S. 6-21.5 as authority for its order. Petitioners contend that the award of attorney's fees pursuant to G.S. 6-21.5 was also error. We disagree.

General Statute 6-21.5 states the following:

In any civil action or special proceeding the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading. The filing of a general denial or the granting of any preliminary motion, such as a motion for judgment on the pleadings pursuant to G.S. 1A-1, Rule 12, a motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6), a motion for a directed verdict pursuant to G.S. 1A-1, Rule 50, or a motion for summary judgment pursuant to G.S. 1A-1, Rule 56, is not in itself a sufficient reason for the court to award attorney's fees, but may be evidence to support the court's decision to make such an award. A party who advances a claim or defense supported by a good faith argument for an extension, modification, or reversal of law may not be required under this section to pay attorney's fees. The court shall make findings of fact and conclusions of law to support its award of attorney's fees under this section.

This Court has defined a "justiciable issue" as an issue that is "real and present as opposed to imagined or fanciful." *Sprouse v. North River Ins. Co.*, 81 N.C. App. 311, 326, 344 S.E. 2d 555, 565, *disc. rev. denied*, 318 N.C. 284, 348 S.E. 2d 344 (1986). " 'Complete absence of a justiciable issue' suggests that it must conclusively appear that such issues are absent even giving the losing party's

pleadings the indulgent treatment which they receive on motions for summary judgment or to dismiss." *Id.* (*citing Vassey v. Burch,* 301 N.C. 68, 269 S.E. 2d 137 (1980)).

In support of their allegation that respondent is not the biological father of Erica, petitioners offer the following facts:

1. That Williamson married Erica's mother only a few weeks before Erica's birth;

2. That Erica bore no physical resemblance to Williamson;

3. That Williamson had severe alcoholism problems preceding Erica's birth;

4. That Erica's mother had a reputation for promiscuity;

5. That Williamson's sister testified at Williamson's sentencing hearing (on his plea of guilty to murdering Erica's mother) that she did not know whose baby Erica was;

6. That Williamson kept in close contact with his sister;

7. That Williamson refused to consent to a blood grouping test; and

8. That the Clarks voluntarily dismissed the claim for strategic reasons, and not because the Clarks believed it was unfounded. (In fact, the Clarks strategy, "to get on with the alternative . . . claim," was successful, since the District Court later entered Judgment revoking Williamson's parental rights.)

Of these "facts," only the first and second allegation appeared in petitioners' complaint. Respondent's alcoholism, his contact with his sister, and petitioners' purported reasons for dismissing the claim bear little or no relevance as to whether petitioners' claim presented a "justiciable issue of law or fact." The assertion that Erica's mother had a reputation for promiscuity and respondent's sister's statement at the sentencing hearing are supported by nothing in the record except the bare assertions of petitioners' attorney.

The record shows and the trial court found as fact that throughout the four years of litigation preceding the filing of the paternity action, including a complaint filed in federal court at the

same time as the paternity action was filed in the State court, petitioners consistently identified respondent as Erica's father. As to respondent's "refusal to consent to a blood grouping test," the trial court noted in its findings that originally the court had issued an order setting out the procedure for obtaining blood tests for respondent and for Erica. A short time thereafter, respondent moved the court for relief from this order claiming the tests were not warranted because of prior court findings identifying respondent as Erica's father and because prior to her death, Erica's mother filed a verified complaint seeking child support for Erica from respondent. Petitioners took a voluntary dismissal of their paternity claim before the court could rule on this motion.

In its conclusions of law, the trial court states, "In the instant case, there was a complete absence of a justiciable issue of law or fact concerning paternity, and there was no good faith basis for asserting and continuing to pursue this claim." The sufficiency of a pleading under the "justiciable issue of law or fact" standard of G.S. 6-21.5 presents a question of law for the court. *Bryant v. Short*, 84 N.C. App. 285, 288, 352 S.E. 2d 245, 247, *disc. rev. denied*, 319 N.C. 458, 356 S.E. 2d 2 (1987); *Sprouse v. North River Ins. Co.*, 81 N.C. App. at 326, 344 S.E. 2d at 565. After a careful review of the complaint and the record, we must agree with the trial court, that there was a total absence of a justiciable issue as to whether respondent is the biological father of Erica. The order awarding respondent attorney's fees for his defense against the paternity action was correct under G.S. 6-21.5.

[11]   Finally, respondent contends that the trial court erred in ascertaining the proper rate of pay for the attorney's fee award. Specifically, respondent excepts to the following conclusion of law made by the trial court:

> The reasonable fair market value of Ms. Brooks' [respondent's attorney's] services in this case is no less than $95 per hour. However, because Ms. Brooks was appointed rather than retained, this Court cannot award a fee in excess of the established $35 per hour rate for court-appointed counsel.

General Statute 7A-451(a)(15) entitles an indigent parent to the services of counsel in an action brought pursuant to Article 24B of Chapter 7A to terminate his parental rights. Accordingly,

counsel was appointed for respondent in this case. Fees for counsel so appointed are governed by G.S. 7A-458, which states the following:

> In districts which do not have a public defender, the court shall fix the fee to which an attorney who represents an indigent person is entitled. In doing so, the court shall allow a fee based on the factors normally considered in fixing attorneys' fees, such as the nature of the case, the time, effort and responsibility involved, and the fee usually charged in similar cases. Fees shall be fixed by the district court judge for actions or proceedings finally determined in the district court and by the superior court judge for actions or proceedings originating in, heard on appeal in, or appealed from the superior court. Even if the trial, appeal, hearing or other proceeding is never held, preparation therefor is nevertheless compensable.

General Statute 6-21.5 authorizes the court to award "a reasonable attorney's fee." The trial court was not limited to the amount fixed by the district court in its payment of counsel appointed to indigent parties. General Statute 6-21.5 is "based on deterring frivolous and bad faith lawsuits by the use of attorney's fees." *Daniels v. Montgomery Mut. Ins. Co.*, 81 N.C. App. 600, 603, 344 S.E. 2d 847, 849, *modified on other grounds*, 320 N.C. 669, 360 S.E. 2d 772 (1986). The purpose of this statute is not served by treating those who bring frivolous suits against indigent parties differently from those who bring frivolous suits against parties who can afford to retain their own counsel. Therefore, the trial court's limitation of the attorney's fee award to the court-appointed rate of $35.00 per hour was error.

For the foregoing reasons, the trial court's order terminating the parental rights of respondent in and to the child Erica Renee Williamson is affirmed; the order directing payment of attorney's fees is remanded to the trial court for further findings and conclusions consistent with this opinion.

Affirmed in part; remanded in part for further findings and conclusions.

Judges JOHNSON and COZORT concur.