WYNN, Judge.
This appeal arises from a 18 October 2002 order of the Harnett County District Court terminating the parental rights of L.G.'s natural parents. After careful review, we affirm the trial court's order.
The underlying facts tend to show that L.G. was born on 20 November 2000. Between March and April 2001, the parents took L.G. to Cape Fear Valley Medical Center on four occasions within a two-week period. On the first trip, they took L.G. to the emergency room due to high fever, nausea, and vomiting. After being released into the parents' care, the child remained sluggish and inactive. On 30 March 2001, an ambulance transported the child to theemergency room after the father called emergency management services ("EMS"). EMS personnel found the child unconscious, unresponsive, and with agonal respirations. The child suffered two seizures while en route to Cape Fear Valley Medical Center. The parents told medical personnel that the child might have a seizure disorder or meningitis. The child was released into the parents' care on 5 April 2001. On the third occasion, the parents took the child to Cape Fear Valley Medical Center for coughing and congestion. Thereafter, the child was released into the parents' care again. But an hour later, the child began to get sleepy and her eyes were rolling back in her head. The parents immediately took the child to the emergency room at Cape Fear Valley Medical Center where a CT scan disclosed a skull fracture, which the radiologist thought was probably present on 30 March 2001. At that point the child was transferred to Duke University Medical Center via life flight.
While waiting for the life flight, the mother told a nurse that the child had fallen off the couch several times about three weeks earlier, and that the father had dropped the child from the crib to the floor.
At Duke University Medical Center, the child was diagnosed with chronic bifrontal subdural hematomas, multiple bilateral pre-retinal and intra-rentinal hemorrhages, a right pariental skull fracture, fractures of the fifth, sixth, seventh, and eighth ribs on her right side, a fracture of the left eighth rib, and bilateralmetaphyseal corner fractures of both tibia bones. Doctors observed that these were non-accidental injuries.
On 9 April 2001, Harnett County Department of Social Services ("DSS") filed a petition alleging the child was an abused and neglected juvenile. At this point the parents were denied access to the child and the child's doctors and medical records at Duke University Medical Center.
On 29 June 2001, the mother called DSS and requested visitation with the child resulting in a supervised visit with the child on 10 July 2001. The parents had five supervised visits before the adjudication on 24 August 2001.
Throughout this time, the parents paid child support, brought gifts, formula, clothes, and cards for the child. They also paid for pictures that had been taken of the child. The mother called DSS about once a week inquiring about the child.
At the hearing on 24 August 2001, the court adjudicated the child to be abused and neglected, ceased reunification efforts, and began permanency planning. At the permanency planning hearing held pursuant to section 7B-907 of the North Carolina General Statutes, the court continued the custody of the child with DSS and directed that termination proceedings against the parents be filed. The court determined the plan for the child was adoption.
DSS filed a motion to terminate the parental rights of the parents on 20 November 2001. On 7 December 2001 and 2 June 2002, the court held two more permanency planning hearings and continued the previous plan. At the hearing to terminate the parental rights on 29 August 2002, the parents denied inflicting injuries to the child. Moreover, the child's grandparents and several friends testified that they had never seen signs of abuse on the child nor did they believe either parent injured the child.
Social workers April Fowler and Coleen Barber testified that the child was now normal and happy and had not suffered any further injuries since being removed from the parents' custody. The social workers also indicated the child was in a potential adoptive home. The court ordered the termination of the rights of the parents and they appealed.
On appeal, the parents argue that the trial court erred by: (1) concluding that grounds existed to terminate their parental rights; (2) concluding that the child had been abused and neglected without proof from DSS that the parents had knowingly allowed the injuries to happen and that abuse and neglect were likely to continue; (3) making findings of fact not based on clear, cogent, and convincing evidence in the record; (4) denying their motions to dismiss; and (5) failing to separately state for which parent it found grounds existed to terminate parental rights.
First, the parents contend that the trial court erred in concluding that grounds existed to terminate their parental rights. They argue that the trial court erred by making findings of fact not based on clear, cogent, and convincing evidence in the record. They also argue that the trial court erred in concluding that thechild had been abused and neglected without proof from DSS that the parents had knowingly allowed the injuries to happen and that abuse and neglect were likely to continue. We disagree.
There are two stages involving a petition to terminate parental rights: adjudication and disposition. At the adjudication stage, the petitioner has the burden of proving by clear, cogent, and convincing evidence that at least one statutory ground for termination exists. In re McMillon, 143 N.C. App. 402, 408, 546 S.E.2d 169, 173-74 (2001); see N.C. Gen. Stat. § 7B-1109(f) (2003) (requiring findings of fact to be based on clear, cogent, and convincing evidence). A finding of one statutory ground is sufficient to support the termination of parental rights. In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984). Upon so finding, the trial court proceeds to the disposition stage, where it determines whether termination of parental rights is in the best interest of the child. McMillon, 143 N.C. App. at 408, 546 S.E.2d at 174.
On appeal, this Court reviews whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and whether those findings support the trial court's conclusions of law. Id. at 408, 546 S.E.2d at 174. If the decision is supported by such evidence, the trial court's findings are binding on appeal, even if there is evidence to the contrary. In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). In the present case, the trial court concluded there were grounds to terminate parental rights under section 7B-1111(a)(1) of the North Carolina General Statutes which defines an abused juvenile as, "[a]ny juvenile less than 18 years of age whose parent . . . [i]nflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means." N.C. Gen. Stat. § 7B-101(1)(a) (2003) (emphasis added). Thus, under the statute, grounds for termination may be found if a parent allows abuse which can be an act of omission. Moreover, a neglected juvenile is defined as, "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent . . . or who lives in an environment injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15) (2003).
In this case, the trial court made the following pertinent findings of fact regarding abuse and neglect:
***
10. [L.G.] is an abused child in that she suffered physical injuries by other than accidental means while in the care of her parents. Those injuries included intracranial injuries (chronic bifrontal subdural hematomas), multiple bilateral pre-retinal and intra-retinal hemorrhages, a right parietal skull fracture, fractures of the 5th, 6th, 7th, and 8th ribs on her right side, a fracture of the left 8th rib, and bilateral metaphyseal corner fractures of both tibia bones.
11. The above injuries were of differing ages and were not the result of any defect of her bones. She has not suffered any injuries after being removed from the home of her parents.
12. The rib injuries were consistent with being caused by direct impact or from forceful squeezing or compression of her ribs. The injuries to her tibias were likely caused by forceful twisting or torques of those bones. The head injuries were caused by [L.G.] being shaken violently and from a forceful impact to her head.
***
15. At the time the original Petition was filed, and at the adjudication, the parents denied causing the injuries and gave the opinion that theses [sic] injuries occurred while the child was at the hospital.
***
21. All of the witnesses for the parents testified that they supported the parents and would trust them alone with [the child].
The record shows that findings number ten through twelve are supported by the medical records of Dr. Karen St. Claire. Several physicians at Duke University Medical Center and Dr. St. Claire agreed that the injuries to the child were nonaccidental in nature.
The record further shows that finding number thirteen is supported by the testimony of the mother, the grandparents, and April Fowler, social worker for DSS. Ms. Fowler testified that the parents never gave her "any reasonable explanation as to the injuries." The parents testified that they were the only caretakers of the child.
This evidence is clear, cogent, and convincing evidence to support the conclusion by the trial court that the child is an abused juvenile, a ground to terminate parental rights. N.C. Gen. Stat. §§ 7B-101(1)(a); 7B-1111(a)(1). Since there is clear, cogent, and convincing evidence, these findings and conclusions arebinding on appeal. Williamson, 91 N.C. App. at 674, 373 S.E.2d at 320. As only abuse or neglect need be proven to satisfy section 7B-1111(a)(1) of the North Carolina General Statutes, and abuse has been proven here, the record shows a ground to terminate parental rights.
The parents next argue that the trial court erred by denying their motions to dismiss as DSS did not submit much evidence beyond what was presented at the prior adjudication. We disagree.
"In testing the sufficiency of the evidence at the close of petitioner's evidence, the standard is whether there is substantial evidence to support the allegations of the petition, viewing the evidence in the light most favorable to petitioner, and giving petitioner the benefit of every reasonable inference to be drawn from the evidence." In re Cusson, 43 N.C. App. 333, 335, 258 S.E.2d 858, 860 (1979). This Court has previously stated that "a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." In re Ballard, 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984); In re Beck, 109 N.C. App. 539, 546, 428 S.E.2d 232, 236 (1993) (trial court did not err in admitting prior order finding child to be abused, since trial court did not rely solely on that order). However, "[t]ermination of parental rights for neglect may not be based solely on past conditions which no longer exist." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). In this case, the trial court received into evidence the prior adjudication order adjudicating the child an abused and neglected juvenile. Petitioner also offered the testimony of social workers April Fowler and Coleen Barber. The social workers testified to the fact that the parents lived in the same situation and had the same support network as they did when the abuse occurred. Based upon the evidence, the trial court concluded that the child was neglected and that such neglect was likely to reoccur if the child was placed back in the care of the parents.
We hold that the trial court properly considered the prior adjudication order as evidence for terminating parental rights. Ballard, 311 N.C. at 713-14, 319 S.E.2d at 231. In addition, Petitioner introduced supporting evidence. As Petitioner presented sufficient evidence of grounds to terminate parental rights, the trial court properly denied the parents' motions to dismiss. Neasham v. Day, 34 N.C. App. 53, 55, 237 S.E.2d 287, 288-89 (1977).
The parents also contend that the trial court erred in failing to separately state for which parent it found grounds existed to terminate parental rights. We disagree.
Section 7B-807 of the North Carolina General Statutes provides that "[t]he adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law. The order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing." N.C. Gen. Stat. § 7B-807(b) (2003). In this case, nearly all evidence and testimony presented at the hearing referred to the parents collectively. The grounds for terminating parental rights were identical. As there is no statutory ground indicating that separate findings of fact and conclusions of law must be made for each parent, the trial court did not err by collectively referring to the parents, where the findings of fact and conclusions of law were identical for each parent.
The parents also argue that the trial court abused its discretion when it determined that it was in the child's best interest to terminate parental rights of both parents, as the trial court did not consider placement of the child with another family member. We disagree.
Once the trial court determines that one or more grounds exist to terminate the parental rights of the respondent, the court must then proceed to the disposition stage.
Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated.
N.C. Gen. Stat. § 7B-1110(a) (2003). The trial court's decision to terminate parental rights is reviewed on an abuse of discretion standard. In re Yocum, 158 N.C. App. 198, 206, 580 S.E.2d 399, 404 (2003). In this case, the trial court made findings of fact that the child received numerous injuries while in the care of the parents and had not received any further injuries since being placed with DSS. Also, the child is now normal and happy and in a potential adoptive home. With this evidence it was within the trial court's discretion to find that termination of parental rights was in the child's best interest. Yocum, 158 N.C. App. at 206, 580 S.E.2d at 404. Additionally, whether the trial court considered placing the child with a family member has no relevance as to the best interests of the child with regards to parental rights being terminated. See N.C. Gen. Stat. § 7B-1110(a).
Affirmed.
Judges HUDSON and ELMORE concur.
Report per Rule 30(e).