IN THE MATTER OF: C.E.L.P.
No. COA09-775
Court of Appeals of North Carolina
Filed October 20, 2009
This case not for publication
Paul W. Freeman, Jr., for petitioner-appellee Wilkes County Department of Social Services.
Klein & Freeman, PLLC, by Marc S. Gentile, for appellee Guardian Ad Litem.
Rebekah W. Davis, for respondent-appellant.
MARTIN, Chief Judge.
Respondent-father appeals from the trial court's permanency planning order changing the permanent plan for C.E.L.P., a minor child, from reunification to adoption, and from the order terminating his parental rights to C.E.L.P. For the reasons discussed herein, we affirm.
Respondent-father is the biological father of C.E.L.P. Ms. R. is C.E.L.P.'s biological mother. On 18 April 2007, the Yadkin County Department of Social Services filed a juvenile petition alleging that C.E.L.P., then age 7, was a neglected child in that he did not receive proper supervision and lived in an environment injurious to his welfare. The petition alleged that, in the early morning hours of 18 April 2007, C.E.L.P. and his ten-year-old brother, B.R., took their grandmother's car keys, that B.R. drove the car with C.E.L.P. in the passenger seat, and that the car wrecked in a single car accident, killing B.R. and seriously injuring C.E.L.P. Yadkin County DSS noted in its petition that the family had a long history with child protective services in Caldwell and Catawba Counties. Yadkin County DSS assumed custody of C.E.L.P., who was eventually placed in a therapeutic foster home in Burke County.
Following a hearing on the petition, the trial court entered an order on 26 September 2007 adjudicating C.E.L.P. a neglected juvenile. The trial court found that from 2003 to 2004, the family received case management services from the Caldwell County DSS due to respondent-father's inappropriate discipline of B.R. In addition, from 2004 to 2007, Catawba and Yadkin Counties provided the family with services due to inappropriate discipline by respondent-father, and due to sexual abuse committed against B.R. and C.E.L.P. by their older brother. The trial court found that, since coming into custody, C.E.L.P. had been treated by clinical social worker Ashley Fiore, who diagnosed C.E.L.P. with disruptive behavioral disorder NOS, anxiety disorder NOS with features of post traumatic stress disorder, encopresis, and mild mental retardation.
As to respondent-father, the Yadkin County District Court found in its adjudication and disposition order that: (1) respondent-father agreed to attend parenting classes provided by the Child Abuse Prevention Team, but did not complete the classes, (2) respondent-father's mental health and substance abuse assessment indicated that "there is a probability that he has a substance abuse disorder," (3) it was directed that respondent-father receive substance abuse counseling on a weekly basis, attend Alcoholics Anonymous ("AA") meetings, and undergo regular drug screens, and (4) respondent-father cooperated minimally with the Yadkin County DSS in completing the requirements of the Out of Home Family Service Agreement. The trial court noted that respondent-father and Ms. R. currently lived in Wilkes County and ordered the case be transferred to Wilkes County DSS. Respondent-father and Ms. R. appealed the adjudication and disposition order.
By order filed 9 October 2007, the Yadkin County District Court suspended visitation between C.E.L.P. and his parents "due to [C.E.L.P.'s] instability and increased bad behavior after such visits." In an unpublished opinion, this Court affirmed the trial court's adjudication and disposition orders. In re C.P., 189 N.C. App. 787, 661 S.E.2d 57 (2007).
The Wilkes County District Court held a permanency planning hearing on 4 March 2008. By order filed 19 March 2008, the trial court ordered respondent-father to: follow through with the substance abuse assessment and alcohol treatment, attend AA meetings, abstain from the use of alcohol, participate in domestic violence and anger management treatment, and set up counseling for grief issues and other issues related to C.E.L.P.'s reintroduction to the family. The trial court ordered Wilkes County DSS to provide financial assistance to the parents so that they could participate in the programs if needed.
The Wilkes County District Court held another permanency planning hearing on 3 June and 2 July 2008. By order filed 18 July 2008, the trial court found that C.E.L.P. was doing well in his therapeutic foster care placement. The trial court also found that, due to the parents' lack of progress, and the continued needs of C.E.L.P., it was not possible for C.E.L.P. to be returned to the home within the next six months. The trial court ordered adoption be the permanent plan for C.E.L.P. Both parents gave notice of appeal in open court.
On 9 September 2008, DSS filed a petition for termination of parental rights based upon neglect pursuant to N.C.G.S. § 7B-1111(a)(1), willfully leaving the child in foster care without making reasonable progress under the circumstances pursuant to N.C.G.S. § 7B-1111(a)(2), and failure to pay a reasonable portion of child care pursuant to N.C.G.S. § 7B-1111(a)(3). After conducting a hearing, the trial court found grounds to terminate the parental rights of respondent-father under N.C.G.S. §§ 7B-1111(a)(1) and (a)(2). The trial court concluded it was in the best interest of C.E.L.P. to terminate the parental rights of both respondent-father and respondent-mother. Respondent-father appeals.

I.
On appeal, respondent-father assigns error to the trial court's order ceasing reunification efforts and changing the permanent plan to adoption.
The purpose of a permanency planning hearing is "to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a). At the conclusion of the permanency planning hearing, if the trial court determines the child is not to return home, the trial court is required to consider certain criteria and make written findings of fact on relevant criteria. N.C. Gen. Stat. §. 7B-907(b). The criteria set forth in N.C.G.S. § 7B-907(b) are:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;
(6) Any other criteria the court deems necessary.
The permanency planning order need not "contain a formal listing of the § 7B-907(b)(1)-(6) factors, expressly denominated as such . . . [as long as the trial court makes] written findings regarding the relevant § 7B-907(b) factors." In re J.C.S., 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004), overruled on other grounds by In re R.T.W., 359 N.C. 539, 614 S.E.2d 489 (2005). If the trial court continues the child's placement in the custody or placement responsibility of DSS, the order must comply with N.C.G.S. § 7B-507. N.C. Gen. Stat. § 7B-907(c). N.C.G.S. § 7B-507(b) allows a trial court to cease reunification efforts if it finds that "[efforts to reunify parents and child] clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time . . . ." N.C. Gen. Stat. § 7B-507(b) (2007).
"Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings [of fact] and the findings [of fact] support the conclusions of law." In re J.C.S., 164 N.C. App. at 106, 595 S.E.2d at 161. "If the trial court's findings of fact `are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary.'" In re S.C.R., ___ N.C. App. ___, ___, 679 S.E.2d 905, 909 (2009) (quoting In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988)).
Respondent-father does not assign error to any of the trial court's findings of fact. Accordingly, the findings are presumed to be correct and supported by competent evidence. In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133, reh'g denied, 306 N.C. 565 (1982), appeal dismissed, 459 U.S. 1139, 74 L. Ed. 2d 987 (1983).
Respondent-father argues that the findings do not support the conclusion of law that adoption was the best plan and that efforts to eliminate the need for placement of the child would be futile.
In the case sub judice, the trial court found:
3. [C.E.L.P.] is currently in a therapeutic foster care placement, and has been in this placement since April, 2007. He is doing very well in this placement. [C.E.L.P.'s] foster mother reports, and the Court finds, that [C.E.L.P.] is making good progress in his academic skills, controlling his negative behaviors, and socialization. The foster mother further opines, and the Court finds, that [C.E.L.P.] needs a safe and secure home with "lots of structure and routine."
4. Visitation with [C.E.L.P.] and his parents was stopped in March, 2008. [C.E.L.P.'s] behaviors have improved significantly since visitation was stopped.
5. [C.E.L.P.] continues in weekly therapy with Sara Shelly, licensed therapist. Ms. Shelly states, and the Court finds, that [C.E.L.P.] "continues to display behaviors of a child that has been severely traumatized." . . . [C.E.L.P.] continues to express fear of his father and regresses in his behavior when discussing his father. . . .
. . . .
7. In particular, Dr. Batten has opined, and the court finds, that: "A review of the history reveals a pattern of chronic under-functioning as parents." Dr. Batten goes on to state, and the Court finds, "it seems accurate to say that neither (of the children) has gotten the kind of parenting or professional help that might have prevented . . . the problems that have been associated with this family over the passed [sic] 10 years or more."
. . . .
9. [Ms. R] has [not] attended Al-A-Non meetings previously directed by the Court. Neither parent has entered into counseling to address their grief issues. [Ms. R] has also not participated in domestic violence classes for victims. [Respondent-father] has not completely abstain [sic] from the use of alcohol. [Respondent-father] has also [not] participated in domestic violence classes or sought treatment for his anger management and domestic violence problems.
. . . .
14. The Wilkes County Department of Social Services has utilized reasonable efforts to eliminate the need for placement of the child.
15. Because of the parents' lack of progress, and the continued needs of [C.E.L.P.] it is not possible for the child to be returned to the home of a parent immediately or within the next six (6) months.
16. There are no relatives of the child who are willing and able to provide proper care and supervision in a safe home.
17. Any further efforts to eliminate the need for placement of the child would be futile and contrary to the child's need for a safe, permanent home within a reasonable period of time.
18. [C.E.L.P.] is in need of significant structure and stability which his parents are either unwilling or unable to provide.
. . . .
20. The parents have had ten (10) years in which to resolve the issues that led to [C.E.L.P.'s] removal from their home. 21. The psychological evaluation of Jennifer Capaletti performed upon [C.E.L.P.] and described in the written report of May 24, 2008, indicates and the Court finds that:
A. [C.E.L.P.] has a full scale I.Q. of 60;
B. 99.6% of [C.E.L.P.'s] peers are functioning at a higher level than [C.E.L.P.];
C. [C.E.L.P.] has "a significant weakness in his general fund of knowledge and his level of alertness to the day-to-day world;"
D. [C.E.L.P.] is functioning, depending on the task, at an equivalency of 2 years of age to 5 years of age.
E. [C.E.L.P.] continues to demonstrate a tremendous amount of emotional stress and anxiety; and that he is "easily frustrated" and "exhibited very low self-confidence." [C.E.L.P.] also "requires a great deal of encouragement;"
F. [C.E.L.P.] has endured a significant amount of trauma and abuse in his young life; and
G. [C.E.L.P.] has "very limited internal resources available to him to assist him in coping with the traumas he has experienced.
22. Since [C.E.L.P.'s] birth, Departments of Social Services in Burke, Caldwell, Yadkin, and Wilkes Counties have attempted to render service to this family for the issues that continue to afflict it. These issues have centered around [respondent-father]'s constant alcohol abuse and Ms. [R's] inability to effectively advocate for herself and her children.
The trial court further concluded that custody of the child should remain with Wilkes County DSS and that it was contrary to the best interest of the child to return home as required by N.C.G.S. § 7B-507(a). Accordingly, we conclude the trial court made the findings required by N.C.G.S. §§ 7B-507 and 7B-907 and that its findings of fact support its conclusion that efforts for reunification with respondent-father were futile and contrary to the best interests of the minor child.
In addition, respondent-father contends the disposition of the trial court was an abuse of discretion because respondent-father was not given enough time to comply with the court's demands in the original permanency planning order and because the trial court failed to adequately consider barriers to C.E.L.P.'s adoption. "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." In re B.W., 190 N.C. App. 328, 336, 665 S.E.2d 462, 467 (2008) (internal quotation marks omitted).
Respondent-father first argues that the four-month period from March 2008 when the permanency planning order was first entered was too close to the July 2008 judgment which favored adoption over reunification to allow him to successfully comply with the trial court's directives. N.C.G.S. § 7B-907(a) directs that a permanency planning hearing should be held within twelve months of the child being removed from the parents' custody. "Subsequent permanency planning hearings shall be held at least every six months thereafter, or earlier as set by the court, to review the progress made in finalizing the permanent plan for the juvenile, or if necessary, to make a new permanent plan for the juvenile." N.C. Gen. Stat. § 7B-907(a). The trial court acted well within its authority to review the permanency plan after four months. Moreover, in the present case, the trial court found that the respondent-father had ten years to alter his behavior and that various DSS offices have attempted to provide services to C.E.L.P. and his family since C.E.L.P.'s birth. The record supports this finding. In particular, in 2006, it was recommended that respondent-father seek treatment for alcohol abuse. In April 2007, C.E.L.P. was adjudicated neglected putting respondent-father on notice of problems in the household. In an order entered 27 August 2007, the trial court indicated that respondent-father had been advised previously of the parenting and behavioral issues which required his attention in DSS's Out of Home Family Service Agreement. Accordingly, respondent-father was given specific directives from DSS to alleviate some of the problems which led to C.E.L.P.'s removal by at least August 2007 and had at least ten months to comply with these directives. Thus, we find no merit in his argument.
In addition, respondent-father contends that the trial court did not adequately consider the difficulty of placing C.E.L.P. in an adoptive family. To the contrary, the trial court's Findings of Fact 5 and 21 excerpted above indicate that the court did consider the complex emotional and mental problems of C.E.L.P., but as the trial court concluded in Conclusion of Law 4, "[a]lthough [C.E.L.P.'s] emotional needs pose some difficult problems, the Court does not find that this would be a barrier to [C.E.L.P.'s] adoption." Thus, we hold the trial court's conclusions of law are supported by its findings.
The child's health, safety, and need for a permanent home are the paramount concerns. As such, the trial court did not abuse its discretion in concluding that adoption was the best permanent plan and that reunification efforts with the biological parents should cease. This assignment of error is overruled.

II.
The trial court found grounds existed to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (2). Respondent-father, however, does not challenge the trial court's conclusion that grounds existed to terminate his parental rights. Rather, with respect to grounds for termination, respondent-father argues that Findings of Fact 25, 34, 37 and 38 are not supported by the evidence and should be vacated.
The statutory grounds for terminating parental rights are set forth in N.C.G.S. § 7B-1111. A finding of any one of the enumerated grounds is sufficient to support a termination. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard for review in termination of parental rights cases is whether the court's findings of fact are based upon clear, cogent, and convincing evidence and whether the findings support the conclusions of law." In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001) (internal quotation marks omitted).
In his brief, respondent-father reiterates evidence presented at trial which he contends does not support the trial court's findings. However, "[i]f the trial court's findings of fact `are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary.'" In re S.C.R., ___ N.C. App. ___, ___, 679 S.E.2d at 909 (internal quotation marks omitted). Ample, competent evidence supports the trial court's findings and thus respondent-father's argument has no merit. Moreover, the unchallenged findings of fact support the trial court's conclusion of law that grounds existed to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2). N.C.G.S. § 7B-1111(a)(2) provides for termination if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." In its termination order, the trial court found in pertinent part:
17. Although the parents have had more than a year to complete their Family Service Case Plans and to improve those conditions which caused [C.E.L.P.] to be removed from their home, the parents have failed and refused to do so. Although the parents have completed parenting classes, neither parent has done much else to complete his/her Family Service Case Plan.
18. Specifically, with regard to [respondent-father], the Court finds the following:
A. He has not contacted the Social Worker on a regular basis;
B. He has maintained a stable residence;
C. He has not maintained regular employment. He is currently unemployed. The father does not claim to be disabled;
D. He has not abstained from the use of all alcohol. However, the father states that he has not consumed any alcohol since Halloween 2008;
E. He has not attended at least six (6) AA meetings;
F. He has not attended domestic violence counseling;
G. He has not attended grief counseling or prepared for [C.E.L.P.'s] return; and
H. He has not refrained from all illegal activity. Indeed, at the time that the Court announced its decision in this case, the father was incarcerated in the Yadkin County Jail, having been arrested two (2) days prior to the hearing and one (1) day after the hearing began. He has also been incarcerated at least one (1) time since the matter was last reviewed in July, 2008. He also has criminal charges pending against him.
. . . .
22. It is apparent that neither parent appreciates the effect that their lifestyle has had on [C.E.L.P.] nor appreciates what needs to be done in order to provide for [C.E.L.P.'s] needs.
These findings are sufficient to provide grounds for termination. Thus, this assignment of error is overruled.

III.
Respondent-father contends the trial court abused its discretion in concluding that the termination of his parental rights was in the best interest of C.E.L.P.
"The trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the child's best interests." In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). In determining whether terminating the parent's rights is in the juvenile's best interest, the court "shall consider" the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2007). As a discretionary decision, the trial court's disposition order will be disturbed "only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." See White v. White, 312 N.C. 770, 324 S.E.2d 829 (1985).
Here, the trial court made the following findings of fact to support its determination that it was in the best interests of C.E.L.P. to terminate the parental rights of respondent-father:
1. The minor child involved in this proceeding is [C.E.L.P.]; and that said child was born .. . in Catawba County, North Carolina.
. . . .
12. . . . The Court takes judicial notice of all Orders entered in Wilkes County file number 07 JA 201 and incorporates the same herein by reference as though set forth in full.
. . . .
34. [C.E.L.P.] does not have a strong bond with his parents.
35. [C.E.L.P.] is in need of continued therapy and treatment. It is hoped that with this treatment, he will become suitable for an adoptive home.
36. [C.E.L.P.'s] current placement does not wish to adopt him. However, [C.E.L.P.'s] current placement is ready and willing to continue providing care for [C.E.L.P.] as needed.
These findings indicate a consideration of all the relevant issues under N.C.G.S. § 7B-1110(a), although the statute is not referenced in the findings. We agree with petitioner-appellee that Finding of Fact 12, incorporating the order of 18 July 2008 which found that adoption was the best permanency plan for the child, satisfies N.C.G.S. § 7B-1110(a)(3).
Respondent-father has assigned error to only one finding with regard to the trial court's conclusion that the termination of his parental rights was in the best interest of C.E.L.P. He alleges that Finding of Fact 34 is not supported by clear, cogent, and convincing evidence. He offers evidence to contradict this Finding of Fact in his brief. However, our review of the record shows that Finding of Fact 34 is based upon DSS court reports and testimony from the DSS social worker. When asked whether C.E.L.P. speaks of his parents, the DSS social worker responded, "No. I, I think in the very beginning he would mention them. However, he hasn't openly spoke [sic] about them in months." The social worker also testified that the parents had not been allowed visitation, that visitation would be harmful to C.E.L.P., that C.E.L.P. only speaks of his dead brother, and that C.E.L.P. had not openly spoken about his parents in the last four or five months. Accordingly, there was ample, competent evidence to support the trial court's finding.
Respondent-father's remaining arguments with respect to the trial court's decision to terminate his parental rights are clearly without merit and require no discussion. We conclude that the trial court did not abuse its discretion in determining that terminating respondent-father's parental rights was in the best interests of the minor child. Accordingly, we affirm the order of the trial court.
Affirmed.
Judges ELMORE and BEASLEY concur.
Report per Rule 30(e).